The Court of Civil Appeals reversed a summary judgment in favor of the defendant Diversey Corporation in Harriett Cooper's action brought under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). In doing so, the Court of Civil Appeals considered expert testimony submitted by Cooper in support of her opposition to Diversey's motion for summary judgment. See Cooper v. Diversey Corp., [Ms. 2961418, April 10, 1998] 742 So.2d 1244
(Ala.Civ.App. 1998). We reverse and remand.
The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not raise a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
In our review of a summary judgment, we apply the same standards as the trial court. Ex parte Lumpkin, 702 So.2d 462,465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).
The facts of this case were summarized by the Court of Civil Appeals.
 "From May 1992 until September 1993, Cooper worked at Aratex Services, Inc., a commercial laundry establishment. It would appear from the record that all but one of the chemicals used by Aratex in its laundering process are manufactured and supplied by Diversey Corporation.
 "While employed at Aratex, Cooper experienced certain respiratory and dermatological problems which, she says, were caused by handling wet clothes saturated with chemicals and by being exposed to certain fumes released by the chemicals. Specifically, Cooper experienced a cold, a dry cough, scar tissue on her lungs, shortness of breath, contact dermatitis, joint pain, dizziness, and weakness. Cooper testified that she had never experienced any of these problems prior to her employment with Aratex.
 "Cooper was ultimately diagnosed as having dermatomyositis, a connective tissue autoimmune disorder involving the skin/muscle, which can affect the lungs in terms of scarring. Cooper filed for, and received, workers' compensation benefits, and she is apparently now totally disabled because of her disorder.
 "Cooper eventually sued Diversey under the [AEMLD], alleging that her health problems were caused from exposure to various chemicals in the workplace which, she claimed, were unreasonably dangerous."
742 So.2d at 1245.
Diversey moved for a summary judgment on the grounds that (1) Cooper had failed to identify any product manufactured by Diversey that actually or proximately caused her injuries and (2) Cooper's testimony and the testimony of her *Page 1252 
expert did not identify a product that was in an unreasonably unsafe or dangerous condition when put to its intended use. Diversey supported its summary judgment motion by attaching a transcript of the testimony of Dr. Jack Hasson. Dr. Hasson testified that Cooper's exposure to the chemicals used at Aratex did not cause her injuries. He also testified that the cause of dermatomyositis is "essentially unknown." (R. 160.) Also, in its memorandum brief in support of its motion Diversey argued that the testimony of Cooper's expert was irrelevant and scientifically unreliable. Diversey stated:
 "The United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., [509 U.S. 579] (1993), articulated a strict `gate keeper' role for trial courts and warned that trial judges must ensure that any and all scientific testimony or evidence is not only relevant, but reliable. Under this standard, the Court should look at any expert opinions to see if the expert is qualified to testify as an expert in the field and if the expert testifies to reliable scientific evidence."
(C.R. 167-68.)
In her response to Diversey's motion for summary judgment, Cooper presented the deposition of her expert, Dr. Ronald N. Hunsinger, who testified as follows:
 "Q. Can you say to any degree of certainty or any degree of probability, Doctor, what particular chemical or product that Ms. Cooper was exposed to has caused her problem?
 "MR. RAGSDALE: Object to the form. There is no — inadequate foundation, and the question is confusing, and I object to it.
 "A. The vast majority of the chemicals that we have talked about can serve as skin irritants, and many of them by nature of their volatility can serve as lung irritants. It's difficult to say, many of them could. They could have acted — any of them could have acted independently. They could have had an additive effect, they could have had a potentiating effect or synergistic effect. It is hard to say.
 "Q. And can you say with any degree of probability what effect any of these particular products had on Ms. Cooper?
"MR. RAGSDALE: Object to the form.
 "A. Well, again, it's highly probable, more probable than not if she came in contact with these chemicals dermally that they caused dermatitis or they exacerbated existing underlying skin disorders. And the current medical thinking with dermatomyositis is, while we do not know exactly what causes that condition, it's believed that actually there is a genetic predisposition to it.
 "But there must be a superimposed insult, and so that any of these chemicals that we have mentioned carry the skin irritancy potential or risk or harm could certainly, in my opinion, serve as that superimposed insult that eventually led to the expression of dermatomyositis in the plaintiff [sic].
". . . .
 "Q. We don't know which of these particular products caused her problem?
"MR. RAGSDALE: Object to the form.
"A. Any or all of them could cause the problem.
 "Q. But we don't know which one did; you are not going to offer an opinion that one particular product caused Ms. Cooper's illnesses that she's complaining about today?
 "A. I'm going to say that any or all of them or any combination of them could. But specifically, no, we don't know exactly which one, but they are all capable of it. All of the ones that she came in contact with which had irritancy natures through those exposure pathways, in my opinion, would be capable of either causing and/or exacerbating the conditions of Ms. Cooper.
". . . . *Page 1253 
 "Q. Is it possible that any irritant that she came in contact with in everyday life living in Birmingham, Alabama, could have been the insulting injury or insulting incident as referenced in this literature that set off this problem?
 "A. It's possible. But when you think about the irritating nature of these chemicals against the irritating chemicals that all of us come in contact with to one degree or another by just living in an urban area, it's more probable that these strong industrial-strength cleaning agents were the cause."
(Depo. of Dr. Ronald N. Hunsinger, pp. 115-16; 142-44.) (Emphasis added.)
Although it is unclear from this portion of Dr. Hunsinger's deposition what "chemicals" he was referring to, earlier portions of his deposition show that he was referring to all of the chemicals used by Aratex in its cleaning solutions and to which Cooper was exposed. Diversey manufactured all but one of these chemicals. The chemical not manufactured by Diversey was sodium hypochlorite, which was produced by Industrial Chemical Company. According to Dr. Hunsinger, sodium hypochlorite is a kind of bleach that "can certainly have volatile and irritating effects on the lungs and skin." (Depo. of Dr. Ronald N. Hunsinger, p. 110.)
Diversey did not respond to Cooper's response to its motion for summary judgment, and it did not move to strike Dr. Hunsinger's testimony. The trial court entered a summary judgment for Diversey. The court did not state a reason or reasons for entering the summary judgment. It made the following entry on its case action summary sheet: "Upon argument of counsel and briefs filed by both parties, [Diversey's] motion for summary judgment is GRANTED. Therefore, judgment is entered in favor of defendant Diversey Corporation and against plaintiff. Costs taxed to plaintiff. Clerk: Case terminated."
In reversing the trial court's judgment, the Court of Civil Appeals, considering Dr. Hunsinger's testimony, stated:
 "The evidence, . . . when viewed in a light most favorable to Cooper, suggests that there was a causal connection between Cooper's exposure to the various chemicals and her medical disorder. Furthermore, whether the chemicals were unreasonably dangerous when put to their intended use is a question for the trier of fact. Yamaha Motor Co. v. Thornton, [579 So.2d 619 (Ala. 1991)]. In other words, we conclude that there existed genuine issues of material fact to be resolved by a jury."
742 So.2d at 1248. We granted Diversey's petition for certiorari review.
Diversey argues that the Court of Civil Appeals should not have considered Dr. Hunsinger's testimony offered by Cooper in support of her opposition to Diversey's motion for summary judgment because, Diversey argues, "his testimony is incompetent and does not follow the mandates set out by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579
(1993)." (Petitioner's Brief in Support of Petition for Writ of Certiorari, p. 11.) Diversey, as well as several amici curiae, argue that the Court of Civil Appeals erred in not applying the standard announced in Daubert. Diversey and the amici maintain that this Court should apply the Daubert standards to exclude the expert testimony presented by Cooper in this case.
Cooper argues that this issue was not preserved for our review, because, the record shows, Diversey did not move to exclude or to strike Dr. Hunsinger's testimony. We agree.
Generally, a nonmovant cannot use inadmissible evidence to show the existence of a genuine issue of material fact. See Rule 56(e), Ala.R.Civ.P.; Perry v. Mobile County, 533 So.2d 602,604 (Ala. 1988). However, as Cooper argues, the court can consider inadmissible evidence if the party against whom it is offered does not object to the evidence by moving to *Page 1254 
strike it. See Perry, supra, which was followed in Glenn v. Vulcan Materials Co., 534 So.2d 598 (Ala. 1988), overruled on other grounds, Lowman v. Piedmont Executive Shirt Mfg.Co., 547 So.2d 90
(Ala. 1989); in Glenn this Court applied the Perry rule to deposition testimony. However, this Court has stated that inadmissible evidence cannot be considered under this exception (i.e., the exception that arises when the party does not object to the evidence) if to consider it would cause a "`gross miscarriage of justice.'" Perry, 533 So.2d at 604-05 (quoting Charles Alan Wright et al., Federal Practice and Procedure: Civil 2d § 2738 (1983)).
As noted above, Diversey did not move to strike the expert testimony submitted by Cooper in support of her opposition to Diversey's motion for summary judgment. Furthermore, Diversey has offered no explanation as to why considering the evidence would result in a gross miscarriage of justice, and the record before us suggests no such explanation. We conclude that Diversey waived its objection to the plaintiff's expert testimony.
Diversey has pointed us to Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999), in which the United States Supreme Court held that a trial court did not abuse its discretion in applying the Daubert standard to exclude nonscientific expert testimony. In Kuhmo, however, the defendants moved to exclude the expert testimony submitted by the plaintiff in support of his products-liability claim, and the trial court granted their motion. 526 U.S. at ___, 119 S.Ct at 1173. Because Diversey did not move to exclude Dr. Hunsinger's testimony, the Court of Civil Appeals did not err in considering it.
Diversey also argues that Dr. Hunsinger's testimony did not refute its prima facie showing that the chemicals manufactured by Diversey did not cause Cooper's injuries. It maintains that because Dr. Hunsinger could not testify that a specific product caused Cooper's injuries, his testimony was mere conjecture and therefore not sufficient to create a genuine issue of material fact. We agree.
Many years ago, this Court gave an excellent explanation of the problem caused when a party presents speculative testimony to prove causation:
 "`Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.' [Southworth v. Shea, 131 Ala. 419, 421, 30 So. 774, 775 (1901).]
 "But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."
Southern Ry. v. Dickson, 211 Ala. 481, 486, 100 So. 665, 669
(1924).[1]
Applying the Dickson rule to the present case, we conclude that Dr. Hunsinger's testimony did not point to any one theory of causation implicating only Diversey's products. As noted above, he testified that it was more probable than not that "any or all" of the chemicals to which Cooper was exposed caused her injuries. *Page 1255 
These chemicals included sodium hydorchlorite, a chemical not manufactured by Diversey. Thus, Dr. Hunsinger's theory of causation is just as consistent with the theory that sodium hypochlorite caused Cooper's injuries as it is with the theory that one or more of Diversey's products caused her injuries.
Thus, Dr. Hunsinger's testimony was "without selective application" to the theory that Diversey's products caused Cooper's injuries; thus, it was mere "conjecture," which is insufficient to support a finding of fact. Therefore, the Court of Civil Appeals should not have reversed the summary judgment in favor of Diversey. We reverse the judgment of the Court of Civil Appeals and remand this case for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C. J., and Maddox, Houston, Cook, See, Brown, and Johnstone, JJ., concur.
[1] The legal principle or rule stated in Dickson has been followed in more cases than can be cited in this opinion, but a few examples are Griffin Lumber Co. v. Harper, 247 Ala. 616, 621,25 So.2d 505, 509 (1946), which was followed in Alabama Power Co. v. Robinson, 447 So.2d 148, 153-54 (Ala. 1983), which was quoted in Townsend v. General Motors Corp., 642 So.2d 411, 423 (Ala. 1983), and in the more recent case of Shanes v. Kiser, [Ms. 1970438, January 15, 1999] 729 So.2d 319 (Ala. 1999).