YATES, Judge.
The plaintiff Gerald H. Nelson appeals from a summary judgment in favor of the defendant Elba General Hospital and Nursing Home, Inc. (“Elba General”). On January 23, 1998, Gerald H. Nelson, as executor of the estate of his father, Orice Nelson, deceased, sued Elba General, alleging negligence and wantonness, after his father had died while under Elba General’s care.
Nelson alleged that Elba General had failed to provide medical services, care, and treatment as required of a nursing-home facility; had failed to follow rules and regulations governing the operation and conduct of nursing-home facilities; had failed to follow its personnel policies and procedures; and had failed to provide adequate nursing coverage. Nelson also alleged that Elba General had negligently failed to follow doctor’s orders to administer a continuous oxygen supply to Orice Nelson.
On December 1, 1999, the trial court entered a summary judgment in favor of Elba General. In its judgment, the trial court held that Elba General had “made a prima facie showing of lack of proximate cause and [that] the plaintiff ha[d] failed to provide substantial evidence of his position.” The trial court also struck two affidavits submitted by Nelson in opposition to Elba General’s motion for a summary judgment. Nelson filed a postjudgment motion, which the trial court denied. Nelson appealed to the supreme court, which transferred the case to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
*303 Orice Nelson, age 81, was a resident of Elba General when he died. He suffered from chronic obstructive pulmonary disease, congestive heart failure, and hypertension. While Orice was a resident at Elba General, his physician ordered that he receive two liters of oxygen per minute continuously via nasal cannula. On the morning of the day Orice died, his son discovered that the oxygen concentrator providing Orice with continuous oxygen was not operating. The concentrator was promptly turned back on by a nurse employed by Elba General. Later that day, Orice’s physician made preparations to readmit Orice to the hospital for treatment of pneumonia. During this time, Orice ceased breathing. Because Orice’s family had signed a “do not resuscitate” order, the hospital did not resuscitate him and he died.
A party is entitled to a summary judgment when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. “Our standard of review in cases involving summary judgment is de novo.” Lee v. Burdette, 715 So.2d 804, 806 (Ala.Civ.App.1998). “In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact” and whether the movant “is entitled to a judgment as a matter of law.” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(e)(3), Ala.R.Civ.P.
To prove liability in a medical-malpractice ease, the plaintiff must prove by substantial evidence that the health-care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health-care providers employed in the same general line of practice would exercise in a similar case. § 6-5-548. Additionally, “[tjhere must be more than the mere possibility that the negligence complained of caused the injury; rather, there must be evidence that the negligence complained of probably caused the injury.” Parker v. Collins, 605 So.2d 824, 826 (Ala.1992).
Section 6-5-542(2) provides:
“The standard of care is that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases. A breach of the standard of care is the failure by a health care provider to comply with the standard of care, which failure proximately causes personal injury or wrongful death. This definition applies to all actions for injuries or damages or wrongful death whether in contract or tort and whether based on intentional or unintentional conduct.”
(Emphasis added.)
In support of its motion for a summary judgment, Elba General submitted the affidavit of a registered nurse, who was also the director of nursing for the nursing home at Elba General. She testified in her affidavit that she was familiar with the standard of care that exists in the field of medicine applicable to registered nurses. She also testified that she had reviewed Orice’s medical records. The nurse opined that all of the medical services provided to Orice were performed within the standard of care to be exercised by registered nurses practicing in the national medical community and that at no time did Elba General or any of its employees deviate from the standard of care exercised by similarly situated health-care providers practicing in the national medical community under the same or similar circumstances. She further opined that neither Elba General nor *304 any of its employees had caused or contributed to Orice’s death.
Although a registered nurse may be qualified to testify as to the standard of care that exists in the field of medicine applicable to registered nurses and as to whether that standard of care was breached, a registered nurse is not qualified to testify as an expert with regard to medical causation. We note that Nelson did not object to the use of the registered nurse’s testimony. Although the court can consider inadmissible evidence if the party against whom it is offered does not object to the evidence by moving to strike it, there is an exception to that rule. Our supreme court has stated that “inadmissible evidence cannot be considered under this exception (i.e., the exception that arises when the party does not object to the evidence) if to consider it would cause a ‘ “gross miscarriage of justice.” ’ ” Ex parte Diversey Corp., 742 So.2d 1250, 1254 (Ala.1999), quoting Perry v. Mobile County, 533 So.2d 602, 604-05 (Ala.1988)(quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983)).
There is a vast difference in the education and training of a physician and the education and training of a nurse and a vast difference in the activities they can perform. A licensed physician in the practice of medicine can
“diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality.”
§ 34-24-50(1), Ala.Code 1975. A registered nurse in the practice of professional nursing can perform
“any act in the care and counselling of persons or in the promotion and maintenance of health and prevention of illness and injury based upon the nursing process which includes systematic data gathering, assessment, appropriate nursing judgment and evaluation of human responses to actual or potential health problems through such services as case finding, health teaching, health counselling; and provision of care supportive to or restorative of life and well-being, and executing medical regimens including administering medications and treatments prescribed by a licensed or otherwise legally authorized physician or dentist.”
§ 34-21-l(3)a.
The legislature has not authorized a registered nurse to make a medical diagnosis. Rather, a registered nurse is limited to providing “care and counselling” for a patient and works at the direction of a physician. For this reason, it would be a gross miscarriage of justice to enter a summary judgment in favor of Elba General when the testimony supporting its summary-judgment motion, as to the question of medical causation, has been provided by a person who is not authorized to formulate medical diagnoses.[1]
We find helpful several cases from other jurisdictions addressing the issue of a nurse’s testimony as to medical causation. In Flanagan v. Labe, 446 Pa.Super. 107, 666 A.2d 333 (1995), aff'd, 547 Pa. 254, 690 A.2d 183 (1997), the Pennsylvania Superior Court held that a registered nurse is not *305 competent to testify as to medical causation in a malpractice case. In Short v. Appalachian OH-9, Inc., 203 W.Va. 246, 507 S.E.2d 124 (1998), the West Virginia court held that a nurse was not qualified to testify as to cause of death, time of death, or whether resuscitation was possible. Long v. Methodist Hospital of Indiana, Inc., 699 N.E.2d 1164 (Ind.App.Ct.1998), involved a claim by a heart-surgery patient who claimed to have developed a serious staph infection following the surgery. The Indiana court held that a nurse was not qualified to offer expert testimony on the question whether the hospital’s conduct caused, or increased the risk of, infection. In Kent v. Pioneer Valley Hospital, 930 P.2d 904 (Utah Ct.App.1997), an action against a health-services provider, a registered nurse was held not qualified to give an opinion as to proximate cause of nerve damage.
Three courts in Texas have addressed the issue. In Arlington Memorial Hospital Foundation, Inc. v. Baird, 991 S.W.2d 918 (Tex.App. — Fort Worth 1999), the court held that a nursing expert who was not shown to be qualified to medically diagnose thermal burns or to be an expert on the equipment used, was precluded from testifying as to medical causation. In Pace v. Sadler, 966 S.W.2d 685 (Tex.App. — San Antonio 1998), a nurse was not qualified to medically diagnose causation of a heart condition. In Lesser v. St. Elizabeth Hospital, 807 S.W.2d 657 (Tex.App.— Beaumont 1991), the court held that a nurse might be permitted to testify about proximate causation if she is shown to have specialized experience or training that qualifies her to testify as to medical causation.
The Alabama Supreme Court has held that other medical professionals may, through specialized experience or training, be qualified to testify as to medical causation. See, e.g., Tidwell v. Upjohn Co., 626 So.2d 1297 (Ala.1993) (the plaintiffs husband committed suicide; pharmacist could testify in an AEMLD action as an expert on the question whether ingestion of a particular drug probably caused the death). Additionally, the legislature has recognized four kinds of nurses whose degrees call for advanced training beyond that of a registered nurse: a certified registered nurse practitioner, a certified nurse midwife, a certified registered nurse anesthetist, and a clinical nurse specialist. § 34-21-81. It may be that those nurses with such advanced degrees are qualified to testify as to medical causation, but we will not address that issue, because it is not relevant in the present case.
In Phillips v. Alamed Co., 588 So.2d 463 (Ala.1991), a home-health-care company was hired by the patient’s family to assist the patient in bathing and to check her vital signs, and to then report to a registered nurse, who would then report to the patient’s physician. The patient died the next day from a pulmonary embolus. The supreme court held that the trial court did not err in determining that a registered nurse was not competent to testify as an expert on the issue whether the home-health-care worker’s failure to report the patient’s complaint of shortness of breath to her physician proximately caused the patient’s death, because it involved complex medical issues. Because there was no testimony as to whether the home-healthcare company’s alleged negligence was the proximate cause of the patient’s death, proof of an element of the claim was absent.
In Knapp v. Wilkins, 786 So.2d 457 (Ala.2000), our supreme court held that a chiropractor was competent to testify to the cause of the particular injuries he had treated. Chiropractic medicine is concerned with spinal mechanics and the *306 spine’s muscular, neurologic, and vascular relationships. Knapp is easily distinguishable from the present case. The Alabama Legislature has given a licensed chiropractor the authority to
“examine, analyze and diagnose the human body and its diseases by the use of any physical, clinical, thermal or radonic method, and the use of X-ray diagnosing, and [to] use any other general method of examination for diagnosis and analysis taught in any school of chiropractic recognized by the State Board of Chiropractic Examiners.”
§ 34 — 24—120(b), Ala.Code 1975 (emphasis added). In contrast, the legislature has not granted a registered nurse the authority to make a medical diagnosis. In Hutchins v. DCH Regional Medical Center, 770 So.2d 49 (Ala.2000), our supreme court held that the trial court did not err in denying the hospital’s motion for a judgment as a matter of law, where a registered nurse had opined that the operating-room nurse had breached the standard of care for nursing in failing to adequately prepare a patient for surgery by scrubbing him with Betadine, and a physician had opined that it was probable that improperly preparing a patient, in the absence of other factors, could cause an infection and, ultimately, death. We note that the physician testified as to medical causation.
The trial court held that Elba General “has made a prima facie showing of a lack of proximate cause and the plaintiff has failed to provide substantial evidence of his position.” Although Oriee’s physician had determined that the cause of death was acute congestive heart failure superimposed on chronic obstructive pulmonary disease and probable early pneu-monitis, he did not testify as to whether turning off the oxygen caused or hastened Orice’s death, which is the gravamen of Nelson’s complaint. Elba General failed to present qualified expert testimony regarding medical causation. Therefore, the trial court erred in holding that Elba General had made a prima facie showing of lack of proximate cause. Accordingly, we reverse the judgment and remand the case for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.

. The trial court struck the affidavit of a licensed practical nurse ("LPN”), finding that she did not have the qualifications necessary to proffer opinions on medical causation. An LPN generally has less training and education than an RN and works at the direction of an RN or a physician. § 34 — 21—1 (3)b. We agree that an LPN, like an RN, lacks the training and authority to render a medical diagnosis.