828 So.2d 308 (2001)
Ex parte ELBA GENERAL HOSPITAL AND NURSING HOME, INC.
(In re Gerald H. Nelson, as the executor of the estate of Orice Nelson, deceased v. Elba General Hospital and Nursing Home, Inc.)
1000770.
Supreme Court of Alabama.
September 14, 2001.
*309 W.H. Albritton IV of Albrittons, Clifton, Alverson, Moody & Bowden, P.C., Andalusia, for petitioner.
Gypsy Morrow of Stokes & Morrow, Elba; and Ralph Bohanan, Jr., of Pittman, Hooks, Dutton & Hollis, P.C., Birmningham, for respondent.
LYONS, Justice.
Gerald H. Nelson sued Elba General Hospital and Nursing Home, Inc. ("Elba General"), alleging that, through negligence or wantonness, Elba General had caused the death of his father, Orice Nelson, who had been a patient at Elba General. After the parties had conducted discovery, the trial court entered an order, on December 1, 1999, granting Elba General's motion for summary judgment. Gerald Nelson appealed the summary judgment to the Court of Civil Appeals, which reversed the judgment and remanded the action for further proceedings. See Nelson v. Elba Gen. Hosp. & Nursing Home, Inc., 828 So.2d 301 (Ala.Civ.App.2000). We granted Elba General's petition for certiorari review. We reverse.

I. Factual Background

The opinion by the Court of Civil Appeals states the facts surrounding the death of Orice Nelson:
"Orice Nelson, age 81, was a resident of Elba General when he died. He suffered from chronic obstructive pulmonary disease, congestive heart failure, and hypertension. While Orice was a resident at Elba General, his physician ordered that he receive two liters of oxygen per minute continuously via nasal cannula. On the morning of the day Orice died, his son discovered that the oxygen concentrator providing Orice with continuous oxygen was not operating. The concentrator was promptly turned back on by a nurse employed by Elba General. Later that day, Orice's physician made preparations to readmit Orice to the hospital for treatment of pneumonia. During this time, Orice ceased breathing. Because Orice's family had signed a `do not resuscitate' order, the hospital did not resuscitate him and he died."
Nelson v. Elba Gen. Hosp., 828 So.2d at 303.
II. Proceedings Below

A. In the Trial Court

Elba General moved for a summary judgment, pursuant to Rule 56, Ala. R. Civ. P. In support of its motion, Elba General provided an affidavit from Marie Lepore, R.N., who was the director of nursing for the nursing home at the time of Orice Nelson's death.
In her affidavit, Lepore states that she was personally familiar with Orice Nelson's care and that at no time while he was a patient at Elba General did the staff "deviate from the standard of care exercised *310 by similarly situated health care providers practicing in the national medical community under the same or similar circumstances." She further states that the oxygen administered via a nasal cannula was palliative, not life-sustaining, and that on several occasions the cannula became displaced from Orice Nelson's nose, but that none of those incidents harmed him.
Nelson opposed Elba General's motion for summary judgment by proffering two affidavits, one from Valerie L. Hamilton, R.N., and the other from Carolyn Hudson, L.P.N. Hudson's affidavit stated that she was employed by Elba General at the time of Orice Nelson's death. She further stated that by allowing Orice Nelson's oxygen to be turned off Elba General "failed to follow the medical orders of Dr. Dyess." She concluded that this failure was "gross negligence" and that the treatment Orice Nelson received while a patient at Elba General "caused or contributed to [his] death."
Hamilton stated in her affidavit that she had reviewed the medical files in this case and had concluded that allowing Orice Nelson's oxygen to be turned off "would be a breach of the standard of care of the nurse health care providers providing care and treatment to Mr. Nelson."
Elba General filed two concurrent motions to strike the affidavits of Hudson and Hamilton. The motions were substantively identical, and in them Elba General claimed that the affiants had given "conclusionary testimony of medical causation"; that they had "fail[ed] to predicate the essentials for establishing the opinions"; that the affiants lacked the medical expertise to provide such testimony; that they had given testimony that was speculative and "mere conjecture"; that they had "conducted no research on the subject matter" of their opinions; and that the affidavits refer to "extemporaneous documentation" that is not a part of the affidavit. Nelson did not move to strike the affidavit of Elba General's affiant Marie Lepore.
On December 1, 1999, the trial court granted Elba General's motion to strike the affidavits of Hudson and Hamilton and entered a summary judgment in favor of Elba General. The trial court's order states that Elba General's motion to strike Hudson's affidavit is based upon a contention that she lacked the qualifications to speak to the ultimate issue in the case causation. The trial court granted Elba General's motion to strike Hamilton's affidavit because the affidavit was a copynot an originaland because it referred to deposition testimony and medical records that were not attached to the affidavit. The trial court's order concludes that "[t]he Defendant has made a prima facie showing [of] a lack of proximate cause and the Plaintiff has failed to provide substantial evidence to support his position."
On January 3, 2000, Gerald Nelson filed a motion to alter, amend, or vacate the judgment. The motion states that Nelson had argued at the summary-judgment hearing that the portions of Lepore's affidavit relating to causation should be struck and that Lepore "does not show affirmatively that she is competent to testify as an expert on causation." However, no record of that hearing appears in the record before us, and neither the case action summary nor the trial court's final judgment refers to a motion to strike portions of Lepore's affidavit or to any ruling on such a motion. The trial court denied the motion to alter, amend, or vacate. Gerald Nelson appealed. The opinion of the Court of Civil Appeals states: "We note that Nelson did not object to the use of the registered nurse's [i.e., Lepore's] testimony." 828 So.2d at 304. In its certiorari petition, Elba General vigorously maintains that "no objection to the [Lepore] *311 affidavit was made at the trial level," and Nelson does not dispute this assertion in his responsive brief.
B. Before the Court of Civil Appeals

Nelson appealed to this Court, which transferred the case to the Court of Civil Appeals, pursuant to § 12-2-7(6), Ala. Code 1975. Nelson argued 1) that the trial court had wrongfully struck the affidavit of Valerie Hamilton and 2) that he had presented sufficient evidence to defeat Elba General's motion for a summary judgment.
The Court of Civil Appeals reversed the judgment of the trial court, relying upon Ex parte Diversey Corp., 742 So.2d 1250, 1254 (Ala.1999), wherein this Court held that a trial court may consider defective affidavits that are not objected to, so long as doing so does not result in a "gross miscarriage of justice." The Court of Civil Appeals then discussed at great length its view that nurses, such as Elba General's affiant, may not express opinions as to proximate cause in medical-malpractice cases because, that court suggested, such opinions are beyond their professional expertise. On appeal, Nelson did not rely on Diversey's exception for a "gross miscarriage of justice." The Court of Civil Appeals then reversed the summary judgment because, it held, Lepore's testimony was inadmissible. The Court of Civil Appeals concluded that enforcing Nelson's failure to object would result in a "gross miscarriage of justice." The opinion never addressed the issues actually raised by Nelson in his appeal.
III. Standard of Review

The standard of review applicable to a summary judgment is well established:
"The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12-21-12(d), Ala.Code 1975. Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
"In our review of a summary judgment, [either on a direct appeal or on a certiorari review,] we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990)."
Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999).
IV. Waiver of Objection to Defective Affidavits

As a general rule, an appellate court will not reverse a summary judgment on a ground not presented in the trial court.
"[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before *312 or at the time of submission of the motion for summary judgment."
Ex parte Ryals, 773 So.2d 1011, 1013 (Ala. 2000) (citing Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992)). Put another way, on an appeal from a summary judgment, this Court cannot hold the trial court in error on the basis of arguments made for the first time on appeal. See Barnett v. Funding Plus of America, Inc., 740 So.2d 1069 (Ala.1999); West Town Plaza Assocs., Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala.1993).
Although Nelson stated in his motion to alter, amend, or vacate the judgment that during the hearing on the motion for summary judgment he had made an oral motion to strike Lepore's affidavit, Elba General, in its brief before us, emphatically denies that Nelson made such a motion. Nelson has not contradicted this denial in his brief before us. The record provides no indication that the trial court ruled on any such motion. This Court's review is limited to matters contained in the record, and nothing in the record, other than the statement in Nelson's postjudgment motion, supports the view that Nelson ever made such a motion. Rule 7(b), Ala. R. Civ. P., requires that all motions, "unless made during a hearing or trial, shall be made in writing." See also Beavers v. Woods, 624 So.2d 1343 (Ala. 1993). The basis of this rule is a policy well stated in Alger v. Hayes, 452 F.2d 841, 843-44 (8th Cir.1972):
"Rule 7(b) requires applications for an order to be in writing `unless made during a hearing or trial.' The type of `hearing' at which there is no need for reducing a motion to writing is one in which the proceedings are recorded. Hammond-Knowlton v. Hartford-Connecticut Trust Co., 26 F.Supp. 292, 293 (D.Conn.1939); Mitchell v. Public Service Coordinated Transport, 13 F.R.D. 96 (D.N.J.1952). The rule is explained in In re J. & M. Doyle Co., 130 F.2d 340, 341 [ (3d Cir.1942) ]: `If no written motion is filed ... it is apparent that within a very brief time neither the adverse parties nor the court will be able to tell what took place.' Judge Goodrich added in Raughley v. Pennsylvania R.R., 230 F.2d 387, 391 [ (3d Cir.1956) ]:
"`In the conduct of any organization which has many things to do, some form of system is required lest everything become so botched that the business cannot be done. This applies to the running of an army, a mercantile establishment or a court. We think [Rule] 7(b)(1) is to be taken as meaning what it says.'"
The record contains no evidence indicating Nelson made such a motion and no evidence indicating that the court ruled on such a motion. We simply cannot conclude that Nelson made an oral motion that the record does not indicate he made. Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271, 1277 (Ala.1999) ("`[T]his Court is limited to a review of the record alone, and the record cannot be changed, altered, or varied on appeal by statements in briefs of counsel.'") (quoting Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990)).
On the question whether a trial court should consider a defective affidavit introduced in support of a motion for summary judgment and not objected to by the opposing party, we have consistently held that a failure to object constitutes a waiver of the right to object to the affidavit and that in the absence of an objection the trial court may properly consider such an affidavit, even if an objection alleging the particular defect would clearly have been proper. See Lennon v. Petersen, 624 So.2d 171 (Ala.1993); Cain v. Sheraton Perimeter Park S. Hotel, 592 So.2d 218 (Ala.1991); Morris v. Young, 585 So.2d *313 1374 (Ala.1991); Perry v. Mobile County, 533 So.2d 602 (Ala.1988). An objection need not be made in any particular form. See McMillian v. Wallis, 567 So.2d 1199, 1205 (Ala.1990) (holding that a party must "call the [trial] court's attention" to the fact that a deposition or affidavit is inadmissible and that by failing to do so a party waives any objection to the court's considering the affidavit or deposition).
Federal courts that have considered the issue of a failure to object to a defective affidavit, in the context of Rule 56(e), Fed. R.Civ.P. (which is, for our purposes, identical to our Rule 56(e)), have universally agreed that a failure to object is a waiver of the issue:
"This court has ruled, however, that Rule 56(e) defects are waived where ... no motion to strike is directed to them below. In Re Teltronics Services, Inc., 762 F.2d 185, 192 (2d Cir.1985). As best we have been able to ascertain, the courts that have considered the question are in unanimous accord. See, e.g., Davis v. Sears, Roebuck and Co., 708 F.2d 862, 864 (1st Cir.1983); Scharf v. United States Attorney General, 597 F.2d 1240, 1243 (9th Cir.1979); Williams v. Evangelical Retirement Homes, 594 F.2d 701, 703-04 (8th Cir. 1979); Associated Press v. Cook, 513 F.2d 1300, 1303 (10th Cir.1975); Klingman v. National Indemnity Co., 317 F.2d 850, 854 (7th Cir.1963). See also 6 J. Moore & J. Wicker, Federal Practice ¶ 56.22[1], at 56-1330 (1986); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738, at 507-09 (1983)."
DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 114 (2d Cir.1987) (footnotes omitted). See also In re: Unisys Sav. Plan Litigation, 74 F.3d 420, 437 n. 12 (3d Cir.1996) (holding that Rule 56(e) defects are waived if not raised in the trial court); Gault v. Zellerbach, 981 F.Supp. 533, 536 (N.D.Ohio 1997) (holding that the burden rests on the opponent of a summary-judgment motion to object to improper affidavits and that the failure to object constitutes a waiver of the defect). Even if the affidavit contains impermissible "medical conclusions and opinions," a failure to object in the trial court waives the defect. Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.1994).
We recognize a single exception to this general rule that a party's failure to object to a defective affidavit waives the defect and precludes that party from raising the defect on appeal. This Court, in Ex parte Diversey Corp., 742 So.2d 1250 (Ala.1999), explained the general rule and its single exception in Alabama:
"Generally, a nonmovant cannot use inadmissible evidence to show the existence of a genuine issue of material fact. See Rule 56(e), Ala. R. Civ. P.; Perry v. Mobile County, 533 So.2d 602, 604 (Ala. 1988). However, ... the court can consider inadmissible evidence if the party against whom it is offered does not object to the evidence by moving to strike it. See Perry, supra, which was followed in Glenn v. Vulcan Materials Co., 534 So.2d 598 (Ala.1988), overruled on other grounds, Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala.1989); in Glenn this Court applied the Perry rule to deposition testimony. However, this Court has stated that inadmissible evidence cannot be considered under this exception (i.e., the exception that arises when the party does not object to the evidence) if to consider it would cause a `"gross miscarriage of justice."' Perry, 533 So.2d at 604-05 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice *314 and Procedure: Civil 2d § 2738 (1983))."
742 So.2d at 1253-54.
This Court has not found any reported decision, other than the decision now before us on certiorari review, in which an appellate court has reversed a trial court's summary judgment because the appellate court found that the trial court's considering an unobjected-to defective affidavit constituted a "gross miscarriage of justice." Professor Wright supports his statement of the exception to the rule with citations to cases in which courts note the existence of the exception but decline to apply it. After reviewing the relevant caselaw and considering it in light of the facts of this case, this Court is not convinced that Alabama should be the first state whose courts accepted the proposition that using a defective affidavit in support of a motion for summary judgment caused a gross miscarriage of justice.
In Justice Maddox's special writing in Cantu v. State, 660 So.2d 1026, 1031-32 (Ala.1995), he included an excerpt from an opinion by an Oregon appellate court that explains the judicial basis for requiring that error be preserved in the trial court in order for it to be considered.
"The Oregon Court of Appeals has stated additional reasons for holding that an error not raised and preserved at the trial level cannot be considered on appeal:
"`[I]t is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; ... fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; ... the rule promotes efficient trial proceedings;... reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and ... there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right. The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal.'
"State v. Applegate, 39 Or.App. 17, 21, 591 P.2d 371, 373 (1979)."
(Emphasis added.)
The rationale for requiring a party to raise an issue before the trial court in order to preserve the issue for appeal has a strong policy basis, as explained above. This Court and numerous federal courts, when examining the precise issue now before us, have uniformly held that a party's failure to object to a potentially defective affidavit offered in support of a motion for summary judgment waives the issue on appeal. This issue was not preserved for review by the Court of Civil Appeals and thus cannot stand as the basis for that court's reversal of the trial court's judgment.
V. Conclusion

The judgment of the Court of Civil Appeals is reversed, and the case is remanded for the Court of Civil Appeals to consider the issues raised on Nelson's appeal that were not addressed in that court's previous opinion.
REVERSED AND REMANDED.
*315 MOORE, C.J., and HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.