The State of Alabama ("the State") appeals from a "final order and decree of condemnation" awarding $2,594,525 plus prejudgment interest to Gail Beaird and Marilyn Beaird in compensation for the taking of real estate owned by the Beairds. We affirm.
 I. Factual Background
The Beairds own and operate Cordova Clay Company, which mines clay and coal on property owned by the Beairds and others. On August 21, 2001, the State filed in the Walker County Probate Court a petition to condemn a portion of a 377.42-acre tract of land owned by the Beairds for a right-of-way to construct a highway known as "Corridor X," which will ultimately link Birmingham with Memphis, Tennessee. The probate court appointed a three-member commission to assess the damages and compensation to which the Beairds were entitled. The commission assessed damages of $90,600, and the probate court issued an order condemning the property with title to be transferred to the State upon deposit of that amount in the *Page 388 
probate court. The Beairds appealed to the circuit court for a jury trial, challenging only the amount of compensation.
The principal issue at trial involved the value, and, in particular, the method of valuation, of layers of coal and clay that lie beneath the Beairds' property. More specifically, the top layer is a 15-foot layer of "red burning clay." The second layer is a 10-inch layer of "New Castle coal." Approximately 30 feet beneath the second layer is a 27-inch layer of "Mary Lee coal." Directly underneath the Mary Lee coal seam is a 48-inch layer of "Mary Lee clay." The clay is suitable for the manufacture of brick and tile, and it is undisputed that at the time of the taking, August 21, 2001, Cordova Clay was extracting these materials from an area adjacent to the condemned property. These materials are hereinafter referred to collectively as "minerals."
Cordova Clay is nearly the only company mining clay in Alabama. In the year of the condemnation, Cordova Clay mined approximately (1) 7,000 tons of red burning clay, (2) 150,000 tons of Mary Lee clay, and (3) 36,000 tons of coal. The area subject to the mineral-valuation dispute, namely, the area effectively lost to the Beairds for mining, consisted of approximately 100 acres. This area included (1) the right-of-way itself, (2) a 200-foot buffer zone, or setback, on either side of the right-of-way, and (3) two tracts of land that were "cut off' by the right-of-way (this area is hereinafter referred to collectively as "the affected property").
Before trial, the State filed a motion in limine seeking to preclude testimony as to the "values [of the minerals] created by [calculating the] unit values of [the minerals] in place." That motion was denied.
At trial, both sides of the dispute focused on the value of the minerals beneath the affected property. The State attempted to prove that those minerals had no value atall, taking the position that they could not be economically extracted. Indeed, although the State argues that the current valuation would be the difference between the fair market value of the entire property before the taking and the fair market value of the remainder of the property after the taking, the State offered no evidence as to the value of the minerals beneath the property unaffected by the condemnation (hereinafter referred to as "the remainder property").
The Beairds sought to prove the value of the minerals beneath the affected property arithmetically. Specifically, they calculated the cubic feet per acre of each mineral, multiplied that figure by the total acreage, multiplied that volume by the weight of the mineral per cubic foot, and divided by 2,000 to determine the total tonnage of each of the four minerals. They then multiplied the tonnage by a royalty rate to arrive at the value of each mineral. Finally, they added the four subtotals thus obtained to determine the total royalty value of the minerals beneath the affected property. Using this formula, Gail Beaird testified that the mineral value of the affected property was $2,736,968. This figure was based on Gail Beaird's testimony that included in the taking were 2,721,978 tons of red burning clay, 1,337,112 tons of Mary Lee clay, and 417,928 tons of coal.
At various times throughout this testimony, the State objected on the ground stated in its motion in limine, namely, that such an arithmetic calculation of the "unit values of [the minerals] in place" was an inappropriate means of valuing mineral-bearing property. Its objections were overruled.
The surface value of the affected property was calculated differently. The Beairds calculated the value of theentire *Page 389 surface of the property before the taking at $566,130, and after the taking at $400,007, with a difference of approximately $166,000. Thus, the Beairds presented evidence indicating that, based on their before and after calculations, the surface value of the affected property was $166,000.
At the close of all the evidence, the State moved to exclude all evidence as to the value of the minerals beneath theaffected property, on the ground that the Beairds had failed to offer testimony of the mineral value of theremainder property, thus allegedly violating the valuation formula set forth in the Alabama Eminent Domain Code, Ala. Code 1975, § 18-1A-1 et seq., specifically § 18-1A-170. It also objected to certain jury instructions requested by the Beairds on the ground that the instructions allowed the jury to consider the Beairds' arithmetic unit-value calculation of the value of the minerals, which, the State reiterated, was invalid. The court overruled the State's objection.
After the jury returned its verdict of $2,594,525 and a "final order and decree of condemnation" was entered on that verdict, the State moved for a new trial. The State contended thatproper valuation evidence was never presented to the jury and that the jury was allowed to considerimproper valuation evidence. The trial court denied the motion, and the State appealed.
 II. Issues
The State presents two issues on appeal, both of which concern only the valuation of the Beairds' mineral interests. First, it contends that the Beairds, in attempting to value their mineral estate, failed to present evidence that complies with the "before-and-after" rule of § 18-1A-170. Second, it insists that the trial court erred in allowing the Beairds to present "evidence of damages to minerals by the `unit-times-price' method" of valuation. State's brief, at 3.
 A. Before-and-After Rule
As to the first issue, the State insists that "[t]he trial court erred in allowing the jury to consider the award of compensation in violation of [§ 18-1A-170]." The State's brief, at 35. Section 18-1A-170 prescribes the valuation formula applicable in the case of a partial taking, as is the case here. That section provides:
 "(a) An owner of property acquired by eminent domain is entitled to compensation determined under the standards prescribed in this article.
 "(b) If there is a partial taking, the valuation rule is the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking."
(Emphasis added.)
The State argues:
 "For the [Beairds] to be due an award for minerals, they were required by the statute to first establish the fair market value of all of the minerals under the entire property from which the acquisition was made. Then, they were required to establish the fair market value of the remainder of the property after the acquisition. This, the Beairds simply failed to do."
State's brief, at 36-37 (emphasis added). For the following reasons, we pretermit consideration of this issue.
In an eminent-domain case, "[n]o party has the burden of proof on the issue of the amount of compensation." Ala. Code 1975, § 18-1A-153. The operation of this rule is explained in the Commentary to § 18-1A-153:
 "This section is identical to [the Uniform Eminent Domain Code] Section 904, and it probably changes the law in *Page 390 
Alabama regarding the risk of nonpersuasion.
 "It seems difficult to assign an intelligible meaning to the concept of `burden of proof in the eminent domain context, since the pleadings are not required to allege or deny the amount of the compensation claimed, and the ultimate standard of decision is the constitutional rule of `just compensation.' The amount of compensation that is `just' is essentially an objective market-established fact, although the practical difficulties of marshalling persuasive evidence of that fact are often formidable. From a realistic view, the trier of fact ordinarily is presented with varying and usually (or at least often) inconsistent opinions as to value, together with disparate supporting data; the ultimate determination necessarily reflects the weight and degree of credibility accorded to these circumstances, [and] no rational policy basis exists for assigning presumptive validity to the amount specified either in the condemnor's offer or in the property owner's demand, thereby requiring the adverse party to assume the burden of controverting that figure.
 "By declaring that neither party has the burden of proof on the compensation issue, this section in effect requires the trier of fact to make its determination upon the basis of all relevant evidence presented on the issue, without regard to its source, and without assuming that either party has a greater burden of persuasion than the other.
 "This section is intended to eliminate any formal burden of proof on all issues directly relating to the amount of compensation, including subsidiary issues affecting valuation and damages. The burden of producing evidence, as distinguished from the risk of nonpersuasion, is not affected, but remains upon the proponent of a particular issue. For example, a defendant who claims that there is a probability of imminent rezoning of his property for a higher and more valuable use, or that substantial damage will accrue to the remainder of his property in a partial taking case, will have the obligation to adduce evidence supporting his position on those issues. Absent such production, the trier of fact mil necessarily reach its conclusions from the other party's evidence alone. Conversely, if the condemnor contends that recent increases in property value were in fact caused by public knowledge of the project for which the property is being taken, and should thus be excluded from consideration, it will have the duty initially to produce relevant evidence in order to have that contention properly submitted to the trier of fact.
 "The rule of this section does not affect the burden of proof on issues other than the amount of compensation."
(Emphasis added.)
Under the equal-burden rule of § 18-1A-153, the burden is the State's, as much the property owner's, to present testimony of value in the proper formula. In this case, the State seeks to penalize the Beairds for failing to offer testimony as to the mineral value of the entire property, although the State, itself, did not purport to do so. The State cannot take comfort, as it attempts to do, in the fact that it ascribed no value to the minerals under the affectedproperty. It is undisputed that the Beairds were mining minerals under the remainder property at the time of the taking. In other words, it is undisputed that the mineral estate of the remainder property had value, which the State ignored. The State's litigating position that the mineral value of theaffected property was zero is entirely unrelated to the State's burden to present evidence of the *Page 391 
mineral value of the remainder property. Thus, the State's method of mineral valuation differed in no relevant respect from that of the Beairds. Indeed, the logic of the State's argument would apply as forcefully for excluding theState's valuation evidence.
In an eminent-domain case, a condemnor that proffers valuation evidence derived from an allegedly improper formula cannot be heard to complain when the condemnee offers evidence based on the same formula. State v. Waller, 395 So.2d 37
(Ala. 1981) (the State could not complain of the admission of allegedly improper "income approach to valuation," where the same evidence was previously introduced by the State). Cf.Murray v. Alabama Power Co., 413 So.2d 1109, 1115
(Ala. 1982) ("a party cannot introduce evidence in a case and on appeal assert that the trial court committed reversible error by admitting that evidence"). More specifically, a condemnor may not, itself, offer only evidence of the fair market value of thecondemned parcel, and then, after the close of all the evidence, insist, as the State has done here, on the exclusion of the condemnee's evidence of value of the condemned parcel on the ground that no evidence was presented as to the value of theentire property. Consequently, the State is not entitled to relief on this issue.
 B. Unit-Times-Price Method of Valuation
The State next contends that the Beairds were not entitled to "introduce a purely arithmetic valuation of minerals in place, without testimony as to market and without testimony as to thepresent fair market value of those minerals as of the date of the taking." State's brief, at 43 (emphasis in original). Stating the argument another way, the State insists that the Beairds could not properly show the value of the property on the date of the taking by "the arithmetic sum of all the royalty payments that might be produced in the next hundred years without discount to present value." The State's brief, at 45 (emphasis added).
The Beairds insist that their valuation method was consistent with Alabama law. They also point out that when the State negotiates short-term leases with mining companies for the extraction of coal from State-owned land, royalty payments due the State are not reduced to present value.
The State "agrees that it considers quantities and royalty rates in valuing minerals and that a jury mayconsider the quantity and quality of the remaining coal and itsfair market value per unit." Reply brief, at 20 (some emphasis added). According to the State, however, the "oneelement sorely lacking in the Beairds' calculation [is] anadjustment to present value." Id. at 30 (emphasis added). It is evident that the State has changed itsposition on this issue since trial.
Throughout the trial, the State argued that the Beairds' arithmetic calculation of the "unit values of [the minerals] in place" was an inappropriate means of valuing mineral-bearing property. Now, however, the State concedes that "a jurymay consider the quantity and quality of the remaining [minerals] and [their] fair market value per unit," reply brief, at 20 (emphasis added), so long as the calculation is adjust[ed] to present value." Id. at 30 (emphasis added).
It is well settled that a party "cannot try the case on one theory and then appeal on a different theory." Kershaw v.Knox Kershaw, Inc., 523 So.2d 351, 359 (Ala. 1988). See alsoKent v. Sims, 460 So.2d 144 (Ala. 1984); Vaughn v.Thomas, 372 So.2d 1309 (Ala. 1979). More recently, this Court explained: *Page 392 
 [F]airness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; . . . the rule promotes efficient trial proceedings; . . . reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and . . . there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right. The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal."'"
Ex parte Elba Gen. Hosp. Nursing Home, Inc.,828 So.2d 308, 314 (Ala. 2001) (quoting Cantu v. State,660 So.2d 1026, 1032 (Ala. 1995) (Maddox, J., concurring in part and dissenting in part), quoting in turn State v.Applegate, 39 Or.App. 17, 21, 591 P.2d 371, 373
(1979) (emphasis added in Ex parte Elba)).
It is undisputed that the jury's calculations were not reduced to reflect present value. It is also uncontroverted that the State did not request a jury charge on present value. In essence, therefore, the State is seeking a new trial on the ground that the jury did not adjust its award to reflect present value, when it neither relied on that theory in the trial court, requested a charge requiring a reduction to present value, nor objected to the absence of such an instruction. Had the State tried its case on the theory on which it now relies, "`"the parties and public [might have been] spared the expense of an appeal."'" Id.
In that connection, it is also well established that a party may not obtain a reversal for the failure of the trial court to give an instruction that was not requested. Herbert v.Huie, 1 Ala. 18 (1840). See also Ala. R. Civ. P. 51;Madison v. Weldon, 446 So.2d 21, 29 (Ala. 1984);Wren v. Blackburn, 293 Ala. 393, 397, 304 So.2d 187,191 (1974) ("The remedy of the party, who desires that a jury be instructed on a particular point of law, is to request a written charge."). For these reasons, the State is not entitled to relief on the second issue.
 III. Conclusion
For the reasons expressed in this opinion, the State has presented no reason for reversal of the trial court's judgment. That judgment is, therefore, affirmed.
AFFIRMED.
COBB, C.J., and SEE, SMITH, and PARKER, JJ., concur.