DONALDSON, Judge.
T.C. (“the mother”) appeals the judgments entered by the Houston Juvenile Court (“the trial court”) on December 19, 2013, which found E1.E. and Ev.E. (“the children”) to be dependent and placing the children in the custody of Y.R. (“the maternal grandmother”).

Facts and Procedural History

The maternal grandmother filed petitions on August 27, 2012, in the trial court alleging that the children were dependent. The petitions set forth numerous grounds in support of that assertion, specifically alleging, among other things, that the mother had been in several relationships involving domestic violence, that the mother abuses prescription drugs, and that the mother was at that time admitted to the behavioral-medicine unit of a hospital for mental illness. The maternal grandmother requested legal custody of the children. On that same date, the trial court granted temporary custody of the children to the maternal grandmother. The trial of the matter was continued numerous times, in part to allow the mother to obtain a mental evaluation and in part because, in December 2012, D.E. (“the father”) filed a custody-modification petition in Louisiana state court regarding the children. That action was ultimately resolved when the Louisiana state court declined to exercise jurisdiction over the children and the father dismissed his petition.
The trial court held an adjudicatory hearing on December 12, 2013, at which the only evidence submitted was through the testimony of the mother and the maternal grandmother. The father was also a party to the actions but did not appear at the trial, has not appealed the trial court’s *922 judgments, and has not taken any part in these appeals.
At trial, the mother testified that she had moved from Alabama and was living in a one-bedroom converted garage apartment in Norco, Louisiana, where she had been since May 2013. She testified:
“I have been looking for a bigger, two-to three-bedroom apartment. I’ve found some. I’m still holding out hope that I can get it at a cheaper price. Being that my car just broke down, I had to take all the money I was saving towards that to purchase a car.”
The mother testified that her current job was as an assistant manager at a pizza store, where she had been working since August 2013. She testified that she was taking the prescription medications Effe-xor for treatment of “situational depression” and Vicoprofen (a combination of hy-drocodone and ibuprofen) twice daily for pain. She testified that she was seeing a pastor for counseling but that she was not under the care of any mental-health professionals.
When questioned about how many schools the children had attended while in her care, the mother testified that “a number doesn’t pop into my head immediately ... I could probably count. But I would like to say right at seven.”
The mother testified that she did not think the maternal grandmother had given adequate care to the children. In explaining her dissatisfaction with the maternal grandmother’s parenting skills, the mother said: “Look at me, for one, how I turned out. Do you think I want my children to be raised by the same monster that’s done this to me?”
The mother testified that one of the children is deaf in one ear and requires a hearing aid for the other as a result of a birth defect. The maternal grandmother testified that she had sought surgical treatment for this child. The mother testified that she was opposed to the surgical treatment.
The maternal grandmother testified that the mother had experienced mental-illness issues since her childhood. The maternal grandmother testified that the mother had been engaged in several abusive relationships, had moved frequently, and had failed to adequately provide for herself and for the children regularly throughout their lives. Evidence was presented regarding the mother’s past abusive relationships, her abuse of drugs, and her mental-health treatment which included inpatient care. The evidence also showed that the mother had not contributed any amounts toward the support of the children while they had been in the custody of the maternal grandmother.
On December 19, 2013, the trial court entered separate judgments finding the children to be dependent and placing them into the permanent custody of the maternal grandmother. The judgments did not make any findings of fact or state the specific grounds on which the court found the children to be dependent. Neither party takes issue on appeal with the failure of the trial court to issue written findings of fact or to provide the basis of its finding of dependency.
The mother filed motions to alter, amend, or vacate on January 2, 2014, arguing that the evidence did not support a finding that the children were still dependent at the time of the hearing or in the months leading up to the hearing. The trial court denied that motion the same day. The mother filed her notices of appeal on January 2, 2014.

Standard of Review

“ ‘Our standard of review of dependency determinations is well settled.
*923 “ ‘ “A finding of dependency must be supported by clear and convincing evidence. § 12-15-65(f)[, Ala.Code 1975][3]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court’s ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep’t of Human Res., 686 So.2d 1253 (Ala.Civ.App.1996).”
“ ‘J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004)....’
[[Image here]]
“[3] The requirement that a finding of dependency must be supported by clear and convincing evidence before the dis-positional phase of a dependency proceeding is now codified at § 12-15-311(a), Ala.Code 1975.”
J.L. v. W.E., 64 So.3d 631, 634 (Ala.Civ.App.2010) (quoting L.A.C. v. T.S.C., 8 So.3d 322, 326-27 (Ala.Civ.App.2008)). See also Ex parte McInish, 47 So.3d 767 (Ala.2008) (explaining the standard of review to be used in evaluating whether the clear- and-convincing-evidence burden of proof has been met).

Discussion

The mother raises a single issue on appeal — whether the trial court’s” judgments are supported by clear and convincing evidence that the children were dependent at the time of disposition. . The mother concedes that, at the time the maternal grandmother filed her petitions seeking a finding of dependency, the children were dependent because “she has had some difficulties and instability in the past.” This includes the facts that the mother has moved frequently, has been in a series of physically abusive relationships, and had been admitted to the behavioral-medicine unit of a hospital at the time the petitions were filed. However, the mother argues that the testimony shows that, at that time of trial, “she has ‘gotten it together’ without any help from [the maternal grandmother]” and that “she is more stable than she has been for most of her life.” Aside from citation to general propositions of law, the mother’s argument rests on a citation to V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App. 2008)(“ ‘[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.’ ” (quoting K.B. v. Cleburne Cnty. Dep’t of Human Res., 897 So.2d 379, 389 (Ala.Civ.App.2004)(Murdock, J., concurring in the result))).
The trial court did not make specific findings of the fact supporting the adjudications of dependency.
“‘[W]here a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ Lemon v. Golf Terrace Owners Ass’n, 611 So.2d 263, 265 (Ala.1992). See W.D. Williams, Inc. v. Ivey, 777 So.2d 94, 98 (Ala.2000); Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997); Ex parte Bryowsky, 676 So.2d [1322,] 1324 [ (Ala.1996) ]; Jantronic Systems, Inc. v. Brock, 646 So.2d 1337, 1337 (Ala.1994); Meeks v. Hill, 557 So.2d 1238, 1240 (Ala.1990); May v. Campbell, 470 So.2d 1188, 1190 (Ala.1985); Hand v. Stanard, 392 So.2d 1157, 1159 (Ala.1980). Moreover, *924 ‘[bjecause the trial court has the advantage of observing the witnesses’ demeanor and has a superior opportunity to assess their credibility, this Court cannot alter the trial court’s judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong.’ Ex parte D.W.W., 717 So.2d 793, 795 (Ala.1998) (emphasis added).”
Ex parte Fann, 810 So.2d 631, 636 (Ala.2001).
The mother argues that the evidence shows that, at the time of the disposition, she had a job and transportation, was receiving pastoral counseling and medication, and was not currently in a romantic relationship. The testimony presented by the mother at trial, if believed by the trial court, would indicate that the mother made progress in gaming stability during the pendency of the litigation. However, the trial court could have found from the mother’s own testimony that she had several remaining issues affecting her ability to provide for the care, support, and education of the children and to discharge her responsibilities to and for the children. See § 12-15-102(8), Ala.Code 1975. At the time of disposition, the mother testified that she had moved away from Alabama to Louisiana and had been living in a one-bedroom garage apartment for approximately seven months. She testified that she had exhausted all of her funds to purchase a car. She testified that she had been at her current employment for four months. She was not seeking counseling for her depression. Though the mother testified that she was not in a romantic relationship at the time, she admitted that during the trial she was staying in a motel with a male. The mother described her relationship with her three siblings as “nonexistent.” The mother admitted that her visits with the children had been rare and that the single trip she had made to Alabama to see the children while they were in the maternal grandmother’s custody was court-ordered; however, she blamed the maternal grandmother for not allowing visits to occur. The mother admitted that she had not provided Christmas or birthday presents for the children during the pendency of the cases. Although the mother had not been ordered to pay support to the maternal grandmother for the benefit of the children, the maternal grandmother offered undisputed testimony indicating that the mother had provided no financial support for the children during the 16 months between the filing of the petitions and the date of trial in these matters.
This court has held:
“[T]he juvenile court ‘ “may consider the past history of the family as well as the evidence pertaining to current conditions.” ’ A.R. v. State Dep’t of Human Res., 992 So.2d 748, 760 (Ala.Civ.App.2008)(quoting T.B. v. Lauderdale Cnty. Dep’t of Human Res., 920 So.2d 565, 570 (Ala.Civ.App.2005)). In viewing the evidence before the juvenile court relating to the entire case, including the mother’s history as well as the mother’s current conditions, we cannot conclude that the juvenile court’s determination that the mother’s condition was unlikely to improve in the foreseeable future was not supported by clear and convincing evidence.”
A.M.F. v. Tuscaloosa Cnty. Dep’t of Human Res., 75 So.3d 1206, 1213 (Ala.Civ.App.2011).
“In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of witnesses, and the trial court should accept only that testimony it considers to be worthy of belief. Ostrander v. Ostrander, 517 So.2d 3 (Ala.Civ.App.1987). Further, in determining the weight to be accorded to the testi *925 mony of any -witness, the trial court may consider the demeanor of the -witness and the witness’s apparent candor or evasiveness. Ostrander, supra.... It is not the province of this court to override the trial court’s observations.”
Woods v. Woods, 658 So.2d 312, 314 (Ala.Civ.App.1994).
The mother does not dispute that her history of inappropriate behaviors caused the children to be dependent at the time the petitions were filed. Rather, she argues that her conditions as of the time of trial were no longer sufficient to support a finding of dependency. The trial court, having heard the evidence regarding the mother’s history of behavior with the children, personally observed the mother, listened to her answers to questions propounded by counsel, and personally questioned the mother.
The trial court could reasonably have discounted the mother’s testimony that she was sufficiently rehabilitated from the conditions that she admitted caused the dependency to originally occur. Given the mother’s undisputed history of instability, frequent moves, violent romantic relationships, and significant mental-illness issues, the trial court could have reasonably found that living approximately seven months in a one-bedroom apartment, working four months at one job, and having no current mental-health counseling did not indicate that the mother had changed her circumstances such that she was now able to provide for the care, support, and education of the children and to discharge her responsibilities to and for the children.

Conclusion

We cannot substitute our assessment of the mother’s credibility for that of the trial court. Because the mother fails to demonstrate that the trial court’s judgments finding that the children remained dependent at the time of disposition was not supported by the evidence after applying the appropriate standard, the judgments are affirmed.
2130326 — AFFIRMED.
2130327 — AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., dissents, with writing.