Rel: June 28, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

————————————

### CL-2023-0576

————————————

### J.A.

### v.

### S.L.

### Appeal from Dale Juvenile Court
### (JU-23-43.01)

MOORE, Presiding Judge.

J.A. ("the father") appeals from a judgment entered by the Dale Juvenile Court ("the juvenile court") terminating his parental rights to M.J.A. ("the child"), who was born on October 2, 2021. We reverse the juvenile court's judgment.

## Procedural History

On March 28, 2023, S.L. ("the mother") filed a verified petition in the juvenile court seeking to terminate the parental rights of the father to the child. The juvenile court conducted a trial of the case on August 10, 2023. On August 15, 2023, the juvenile court entered a final judgment, in which it found, among other things, that the father had failed to provide for the material needs of the child; had failed to pay child support as ordered; had failed to maintain consistent contact or communication with the child; and had failed to call, visit, or ask to visit with the child in almost 10 months. The juvenile court concluded that, based on those findings, the father was "presumed to have abandoned the child." The juvenile court determined that the father was unable and unwilling to discharge his responsibilities to the child, that his conduct and condition was unlikely to change in the foreseeable future, and that there existed no viable alternative to termination of the father's parental rights. The father timely appealed.

## Issue

On appeal, the father argues that termination of his parental rights was not necessary in this case because the child is residing with the

mother, he poses no threat to the safety of the child, and the termination of his parental rights will not result in the adoption of the child by another man. The father maintains that the termination of his parental rights does not directly benefit the child and that it is, in fact, "cruel and unjust" to the child. Father's brief, p. 15. Thus, he asserts, termination of his parental rights is not in the best interests of the child.

Preservation of Issue

In the final judgment, the juvenile court did not expressly conclude that termination of the father's parental rights would serve the best interests of the child, but that determination was implicit in its judgment. See Montgomery Cnty. Dep't of Hum. Res. v. T.S., 218 So. 3d 1252, 1262 (Ala. Civ. App. 2016) (holding that, in reviewing a judgment in a termination-of-parental-rights case, this court presumes that the juvenile court implicitly made those findings necessary to sustain its judgment). The father did not file a postjudgment motion or otherwise argue before the juvenile court that termination of his parental rights was not in the best interests of the child. The juvenile court appointed a guardian ad litem for the child, see Ala. Code 1975, § 12-15-304, who also

3

did not argue before the juvenile court that termination of the parental rights of the father did not serve the best interests of the child.

Ordinarily, this court may not consider a legal argument for reversal of a judgment that has been raised for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala.1992). However, as an exception to the general rule, in rare circumstances, an Alabama appellate court may consider an issue that has not been otherwise preserved for appeal to protect the welfare and best interests of a minor. See Hall v. Hall, 280 Ala. 275, 192 So. 2d 727 (1966).

In Hall, B.A. Hall was required, pursuant to the terms of a divorce judgment, to pay $75 per month to Mary Brown Hall for the support of the parties' minor child. Subsequently, B.A. delivered $10,000 in cash to Mary and paid 14 months of child support. In a modification action, the Russell Circuit Court determined that Mary should retain $7,000 of the $10,000 as a full and final settlement of her child-support claim and that Mary should repay B.A. the remaining $3,000 of the funds along with the 14 months of child-support payments that B.A. had previously made while his modification petition was pending, which totaled $1,050. Mary appealed, asserting that the circuit court had erred in requiring her to

4

repay the $3,000. On appeal, the supreme court unanimously affirmed the judgment insofar as it required Mary to return the $3,000, but the court reversed the judgment insofar as it required Mary to return the $1,050 in past installments of child support. As to the latter ruling, the supreme court said:

> "While we have held that where the support installments to a minor that mature before a petition to modify is filed are immune from change (Scott v. Scott, 265 Ala. 208, 90 So. 2d 813 [(1956)]), we are here unwilling to hold that the petitioner, for modification, is entitled to a refund of the payments, made after petition was filed, that he elected to pay. We think this court has a duty ex mero motu to protect the welfare of its minor ward who is before the court. Pritchett v. Dixon, 222 Ala. 597, 133 So. 2d 283 [(1931)]; Doss v. Terry, 256 Ala. 218, 54 So. 2d 451 [(1951)].

> "It is to be noted that the alleged agreement between [Mary] and [B.A.], according to the latter's contention, was that $7,000 of the special deposit was to be applied as a lump sum settlement in lieu of future installments, but, so far as the record shows, nothing was said between the parties about a refund of installments paid during the pendency of the petition for modification.

> "Even if there were such an agreement, we wouldn't honor it as being in the best interests and welfare of the minor, whom we are lawfully enjoined to protect after the court has assumed jurisdiction of such welfare. A refund would have to come out of the $7,000 for the reason that [Mary] is not personally bound to make refund from her own assets."

280 Ala. at 280, 192 So. 2d at 731 (emphasis added).

Hall recognizes that appellate courts of this state are "lawfully enjoined to protect" the welfare and best interests of a child once the court has assumed jurisdiction over a judgment concerning the welfare and best interests of a child. This guardianship responsibility allows Alabama appellate courts to act ex mero motu to raise and address an issue affecting the welfare and best interests of a minor child in an appeal filed by the parent of that child even when that parent has not properly preserved the issue for appellate review. See Black's Law Dictionary 575 (6th ed. 1990) (defining "ex mero motu" as "[o]f his own mere motion; ... voluntarily and without prompting or request," and stating that a court acts ex mero motu "[w]hen a court interferes, of its own motion, to object to an irregularity, or to do something which the parties are not strictly entitled to, but which will prevent injustice"). Pursuant to Hall, upon noticing a legal error, apparent on the face of the record, that is prejudicial to the welfare and best interests of a child, an Alabama appellate court should correct that error to prevent an injustice to the child even if, under the ordinary rules of appellate procedure, that error has not been preserved for appellate review. See, e.g., Citizens Walgreen

6

<u>Drug Agency, Inc. v. Gulf Ins. Co.</u>, 282 Ala. 648, 213 So. 2d 814 (1968).

Perhaps because the Alabama Supreme Court no longer has appellate jurisdiction over child-welfare cases, <u>see</u> Ala. Code 1975, § 12-3-10 (vesting the Court of Civil Appeals with appellate jurisdiction over domestic-relations cases beginning in 1969), it has not exercised the power it recognized in <u>Hall</u> since it issued that opinion. However, this court, which is governed by the decisions of the supreme court, <u>see</u> Ala. Code 1975, § 12-3-16, has twice held that it may, in discharging its duty to treat minor children as wards of the court in appellate proceedings, act <u>ex mero motu</u> to correct an obvious legal error to ensure that an order or judgment advances the minor children's welfare and best interests.

In <u>Stevens v. Everett</u>, 784 So. 2d 1054, 1055 (Ala. Civ. App. 2000), overruled on other grounds by <u>Ex parte Fann</u>, 810 So. 2d 631 (Ala. 2001), a child-custody-modification case, this court raised and decided an issue of a trial court's noncompliance with the Alabama Custody and Domestic or Family Abuse Act, Ala. Code 1975, § 30-3-130 et seq., although that issue had not been preserved for appellate review. Responding to Presiding Judge Robertson's dissent arguing that the court could not

7

consider the issue because it was not raised and argued in the underlying proceedings or in the appellant's brief, the court said:

> "Although the mother[, the appellant,] did not specifically raise the [Alabama Custody and Domestic or Family Abuse] Act in the trial court or on appeal, and although Judge Robertson is correct in stating that this court generally does not review on appeal arguments not raised either in the trial court or in the appellant's brief, a case involving child custody is not the 'general' case. Alabama courts have historically held that when a trial 'court has acquired jurisdiction of a child as to the child's custody and control, the child becomes a ward of the court and the parties to the suit are of secondary importance.' Thorne v. Thorne, 344 So. 2d 165, 168 (Ala. Civ. App. 1977) (citation omitted). In addition, our supreme court has held that '[t]he question of the custody of infant children is not an adversary proceeding between parents in the eyes of the law, but is a matter within the peculiar discretion of the [trial court] as to the welfare of wards of the court.' Stephens v. Stephens, 253 Ala. 315, 319-20, 45 So. 2d 153, 157 (1950)."

784 So. 2d at 1055. This court recognized that, in an appeal from a judgment entered in a child-custody case, the court is not bound by the ordinary rules of appellate procedure that would otherwise prevent the court from exercising its duty to notice and correct legal errors adversely affecting the welfare and the best interests of the child.

In Ex parte R.H., 311 So. 3d 761, 771 (Ala. Civ. App. 2020), this court reasoned that, even though the issue had not been properly raised

8

in underlying dependency proceedings, this court could notice and correct an error that had been committed by the Marshall Juvenile Court in appointing a guardian ad litem to execute a pediatric, palliative, and end-of-life care order for a dependent child, which appointment was not authorized by the Natural Death Act, Ala. Code 1975, § 22-8A-1 et seq. In reaching that decision, this court relied partially on <u>Stevens</u> and explained that, although <u>Stevens</u> had been overruled by our supreme court in <u>Ex parte Fann</u>, <u>supra</u>, our supreme court did not hold that this court had overreached by independently raising and addressing an issue not preserved for appeal to protect the welfare and the best interests of the children before the court. 311 So. 3d 771 n.7.

The foregoing cases indicate that this court has limited discretion to invoke the exception to the preservation rule for the benefit of the welfare and best interests of a minor child. That discretion has been exercised only to correct obvious and indisputable violations of statutory and decisional law that clearly had prejudiced a child's substantive or procedural rights. Alabama appellate courts have acted only to correct misunderstandings or misapplications of Alabama law designed to protect and benefit the child. That discretion has not been used by

9

Alabama appellate courts to resolve disputed issues of fact or to consider the sufficiency of the evidence to support a purely factual determination made by a trial court regarding the welfare and best interests of a child.

This court has heretofore not applied the exception to the preservation rule when reviewing a judgment terminating parental rights. When an adult parent appeals a judgment terminating his or her parental rights, we clearly cannot ex mero motu raise and address issues such as whether the parent received due process or whether there are grounds for termination and all viable alternatives have been exhausted, see Ex parte Bodie, 377 So. 3d 1051, 1064 (Ala. 2022) (Parker, C.J., concurring specially), which the parent must properly preserve for appellate review. See, e.g., J.M.L. v. Tuscaloosa Cnty. Dep't of Hum. Res., [Ms. CL-2023-0765, Apr. 6, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). However, the welfare and best interests of a child are a paramount consideration in termination-of-parental-rights proceedings. See J.C. v. State Dep't of Hum. Res., 986 So. 2d 1172 (Ala. Civ. App. 2007). On appeal from a judgment terminating parental rights, this court must assure that the judgment serves the welfare and best interests of the child at issue. See T.W. v. Calhoun Cnty. Dep't of Hum. Res., [Ms. CL-

10

2022-0694, June 2, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023). Consistent with the reasoning in Hall and similar cases, this court should be afforded the discretion to ex mero motu notice and correct an erroneous judgment that is not in the best interests of the child. Nevertheless, in J.C.L. v. J.B.L., 370 So. 3d 254 (Ala. Civ. App. 2022), a termination-of-parental-rights case, a majority of this court declined to use its limited discretion to determine whether the judgment was in the best interests of the child.

The record in J.C.L. disclosed that J.C.L. and J.B.L. had entered into an agreement, pursuant to which J.C.L. would consent to the entry of a judgment terminating her parental rights to their minor child in exchange for monetary consideration, including a waiver of her obligation to pay child support; the Autauga Juvenile Court entered a judgment terminating J.C.L.'s parental rights based on that agreement, without inquiring as to whether the agreement would serve the best interests of the child. On appeal, J.C.L. asserted in one sentence in her appellate brief that "'[t]here is nothing about the agreement suggesting that such was done for the best interests of the child but merely a financial arrangement.'" 370 So. 3d at 264. Over a dissent arguing that Ex parte R.H. allowed the court to consider that argument although it had not

11

been properly preserved for appellate review, 370 So. 3d at 267-68 (Moore, J., dissenting), a majority of this court refused to consider whether the waiver of child support would serve the best interests of the child.

Upon further consideration, it appears that, in J.C.L., this court overlooked our supreme court's decision in Hall, which was not cited in either the majority or the dissenting opinion. Hall had already affirmatively decided that an appellate court should notice and correct an obvious legal error that deprives a child of financial support. In J.C.L., this court should have applied Hall to address the error of the Autauga Juvenile Court in improperly terminating the parental rights of a noncustodial parent based on an agreement with the custodial parent to waive a child's right to child support without inquiring as to whether the agreement was in the best interests of the child. See Ex parte Brooks, 513 So. 2d 614, 617 (Ala. 1987). Instead, the majority opinion avoided the issue by attempting to distinguish the case from Ex parte R.H. on two grounds.

First, the majority opinion insisted that <u>Ex parte R.H.</u> allowed the court to review an issue raised for the first time on appeal only because the life of a child was at stake, whereas the issue at stake in <u>J.C.L.</u> concerned only the loss of child support. 311 So. 3d at 266. However, as <u>Hall</u> illustrates, the life of a child does not have to be in jeopardy for this court to apply the exception to the preservation rule, and this court may act <u>ex mero motu</u> to relieve a child of an incorrect judgment adversely affecting only his or her right to child support. The holding in <u>J.C.L.</u> is clearly in conflict with the supreme court's decision in <u>Hall</u>. <u>See</u> § 12-3-16 (providing that decisions of the Court of Civil Appeals are governed by the opinions of the supreme court).

Second, the majority opinion reasoned that this court should not raise an issue regarding the welfare and best interests of a minor child when his or her guardian ad litem has elected not to do so. 370 So. 3d at 266. However, the rule prevailing in Alabama holds that a guardian ad litem cannot waive an error affecting the welfare and best interests of a minor child by failing to make a proper and timely objection. <u>See</u> <u>Johnston v. Shaw</u>, 31 Ala. 592, 594 (1858) (holding that guardian ad litem could not effectively waive objection to venue on behalf of infants by filing

an answer on their behalf without asserting objection and holding that chancery court could, acting ex mero motu, dismiss suit on behalf of infants). As our supreme court recognized as far back as Clark v. Gilmer, 28 Ala. 265 (1856), an appellate court may not disregard an obvious legal error affecting the welfare and the best interests of a child because the error was not raised or argued by the legal representative of the child. As the supreme court said:

> "It is proper to say, that the error for which the decree is reversed, is one which escaped the notice of the solicitors and the chancellor, and was not even noticed by the counsel on the argument in this court. But, as it is an error to the prejudice of infants, and we see it on the record, and the assignment of errors is broad enough to embrace it, we cannot pass it over, nor allow the decree to stand."

28 Ala. at 266-67. The failure of a guardian ad litem to raise an objection in the court below or to otherwise observe procedural rules for preserving an error for appellate review does not estop an appellate court from proactively guarding and protecting the welfare and best interests of a child. See Jones v. Jones, 56 Ala. 612, 613 (1876); see also Haden v. Eaves, 55 N.M. 40, 43, 226 P.2d 457, 459 (1950) (quoting 3 Am. Jur. Appeal and Error § 249) (noting that some courts apply rules of appellate procedure equally to infants but that "'the better rule'" allows an

14

appellate court to protect the welfare and best interests of a child even when no objection or exception has been made in the lower court); 43 C.J.S. Infants § 468 (2014) (accord); 15 S.C. Jur. Appeal and Error § 72 ("[T]he procedural delicts of adults will not be allowed to harm the interest of minors.").

We conclude that J.C.L. does not accurately represent the state of Alabama law on this point, and we decline to follow it in this case. We conclude that, upon a parent's appeal of a judgment terminating his or her parental rights, this court may exercise its limited discretion to assure that the welfare and best interests of the child at issue have not been compromised by an obvious legal error committed by a juvenile court even though that issue has not been properly preserved for appellate review. See South Carolina Dep't of Soc. Servs. v. Roe, 371 S.C. 450, 463, 639 S.E.2d 165, 172 (Ct. App. 2006) (holding that court would consider whether judgment terminating parental rights served best interests of child even though appellant-parent had not preserved issue for appellate review).

In this case, the father argues only that the judgment should be reversed because, as a matter of law, it is not in the child's best interests

for his parental rights to be terminated. We stress that the father does not argue that the evidence is insufficient to support the implicit determination that the termination of his parental rights was in the best interests of the child. The father instead argues that the juvenile court misapplied the law to the undisputed facts to reach an erroneous legal conclusion that the termination of his parental rights would serve the best interests of the child. We will address that precise legal argument despite the father's failure to raise that same point to the juvenile court.

Facts

The evidence presented indicates that the mother, who is Caucasian, and the father, who is African-American, never married, but had known each other since elementary school and had eventually engaged in a romantic relationship that had resulted in the conception and subsequent birth of the child. After his birth, the child, the mother, and the father resided together in an apartment in Dothan. The mother stayed at home with the child while the father worked to provide food and shelter for the family. The father testified that, during that period, he had worked inconsistent hours, beginning work at either 3:00 a.m. or 5:00 a.m., and that he would be tired when he returned home after work.

He testified, however, that he had been familiar with caring for a newborn because he has a daughter from a previous relationship ("the daughter"), that he had assisted the mother in caring for the child, and that he had helped feed the child. The mother testified that the father had "[v]ery rarely" cared for or helped with diapering the child, that he had "[r]arely" interacted with the child, that he had helped feed the child "[o]n occasion," and that he had interacted with the child when he returned home from work "[w]hen he was not tired." She stated that they had supplemented the father's income with assistance through the federal Special Supplemental Nutrition Program for Women, Infants, and Children and that her parents had also assisted her and the child financially.

The mother also testified that, on September 17, 2022, she and the child had moved out of the apartment they had shared with the father and had moved to Ozark, where they resided with her parents, who, she said, had financially supported her and the child since that time. She stated that she had last been employed when she was pregnant with the child; that she has a Bachelor of Science degree and a clinical doctorate in physical therapy; and that she was not licensed as a physical therapist

17

at the time of the trial, but that she was taking an online course to prepare for a national board exam, which she had previously taken but had not passed. The mother testified that she is able to care for the child on her own and that she has a support system that includes her parents, her brother and his fiancé, and other friends and family. She stated that the child has eczema, had undergone allergy testing, and had had surgery for an umbilical hernia; otherwise, she said, the child does not have any extraordinary medical issues. The mother testified that she was not in a relationship at the time of the trial, that she was not seeking to obtain paternal rights of the child by another, and that her brother had agreed to act as the child's legal guardian if something happened to the mother.

According to the father, the mother had requested for him not to be present for the child's first birthday. The mother testified that the father's mother ("the paternal grandmother") had visited the child on September 30, 2022; she also testified that the paternal grandmother had contacted her on October 19, 2022, and again on April 4, 2023, but that she had failed to respond to the paternal grandmother's last attempt to contact her in April. The mother stated that she had last communicated with the father on October 22, 2022, when the father had informed her

18

that he was going to send some money and some clothes for the child and had requested to see the child. The mother testified that the father had sent her $202 at that time, that she had informed the father that he could visit the child at her parents' home, that he had not responded, and that he had not requested to see the child since that time. According to the mother, on September 22, 2022, she filed in the Houston Circuit Court a petition for custody of the child; on December 12, 2022, the Houston Circuit Court entered a default judgment against the father that, among other things, included a graduated visitation schedule, which had been proposed by the mother and pursuant to which the father would exercise visitation with the child to be supervised by the child's maternal grandmother, and directed the father to pay child support to the mother in the amount of $497 per month. The mother testified that the father had failed to pay child support or to provide gifts for the child following the entry of the default judgment.

The mother testified further that her attorney had brought to her attention the possibility of terminating the father's parental rights. She stated that she did not have any concerns that the father would act aggressively toward the child, and she declined to describe her

19

relationship with the father as having been volatile. The mother admitted that the father had been excited about the birth of the child and that the father exercises visitation with the daughter and has a relationship with her. When asked whether there are "things that maybe [she] as a mother, and as a white woman, wouldn't know for an African-American male," the mother replied, "I agree." She testified, however, that she had not contacted the father following their separation because she had "wanted him to want to see his child" and had "wanted it to be his honest and genuine feelings to see his child." When asked why she believed that termination of the father's parental rights would be in the child's best interests, the mother stated that, if the father's parental rights were not terminated, she "believe[d] [the child] would live a life of inconsistency" and that the child "deserves a parent who is willing and wants to be in his life for the right reasons, and not just [because] he's obligated or because he wants to appear as if he is doing the right thing."

The father testified that, since he and the mother had separated, he had found different employment with more regular hours. He testified that he had failed to respond to the mother's petition for custody in the Houston Circuit Court or to request visitation with the child because he

20

had not wanted to have contact with the mother following their separation. The father stated that he and the mother had failed to contact one another "because of pride" and that he regretted his failure to pursue a relationship with the child. He admitted that he had failed to pay child support; he stated that he could not afford to pay the amount that had been awarded to the mother in the default judgment. The father stated that he loves the child and wants to be in the child's life. He testified also that the child and the daughter had had a great relationship, that the child "would light up when [the daughter] came," and that the daughter had asked about the child and had noticed his absence.

Standard of Review

The salient facts being undisputed, we must determine whether the juvenile court misapplied the applicable law to those facts, which is a question of law that we consider without a presumption of correctness. See Brown v. Childress, 898 So. 2d 786, 788 (Ala. Civ. App. 2004).

Analysis

In 2020, our legislature amended § 12-15-319, see Ala. Acts 2020, Act No. 2020-34, so that it now provides, in pertinent part:

21

> "If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[] of a child [is] unable or unwilling to discharge [his or her] responsibilities to and for the child, or that the conduct or condition of the parent[] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parent[]. <u>In a hearing on a petition for termination of parental rights, the court shall consider the best interests of the child</u>."

(Emphasis added.)

That amendment incorporates long-standing Alabama law allowing a juvenile court to exercise its discretion to terminate parental rights only when it serves the best interests of the child. As explained in <u>Ex parte Brooks</u>:

> "Our courts are entrusted with the responsibility of determining the best interests of children who come before them. When a child's welfare is threatened by continuation of parental rights, the law provides a means for terminating those rights. When, after consideration of all evidence before it, a court determines that termination of parental rights would not serve the best interest of a child, as in the present case, parental rights should not be terminated."

513 So. 2d at 617.

Although some supreme court cases have held that this court applies a two-prong test when analyzing the correctness of a judgment terminating parental rights, <u>see</u>, <u>e.g.</u>, <u>Ex parte T.V.</u>, 971 So. 2d 1 (Ala.

22

2007), as recently explained by Chief Justice Parker, "three elements must be met: a ground for termination, the absence of a viable alternative to termination, and a showing that termination is in the best interests of the child." Ex parte Bodie, 377 So. 3d at 1064 (Parker, C.J., concurring specially). Even in cases in which grounds for termination exist and no other viable alternative may be implemented, a juvenile court still must make a separate determination that termination of parental rights serves the best interests of the child, and, if it does not, it may not terminate parental rights. See Ex parte Brooks, supra.

"Whereas the first two elements exist to protect the parent's rights, this third element exists to protect the child's interests." Ex parte Bodie, 377 So. 3d at 1068 (Parker, C.J., concurring specially). The best-interests-of-the-child inquiry focuses exclusively on the impact of the termination on the needs and interests of the child. In considering the best interests of the child, a juvenile court is determining not whether it can terminate parental rights, but whether it should terminate parental rights for the benefit of the child for whom the remedy is intended. See S.D.P. v. U.R.S., 18 So. 3d 936, 942 (Ala. Civ. App. 2009) (Moore, J., concurring specially).

23

In examining whether termination of parental rights promotes the best interests of the child, a juvenile court should consider all the traditional best-interests factors, see Ex parte Devine, 398 So. 2d 686, 696 (Ala. 1981) (holding that, in deciding what is in the best interests of the child, the fact-finder should consider, among other things, the emotional, social, moral, material, and educational needs of the child), but the court should primarily focus on the effect of the proposed termination on the child's needs for security, stability, and permanency. See S.D.P., 18 So. 3d at 944 (Moore, J., concurring specially). By allowing a juvenile court to involuntarily sever the rights of a parent so that the child can be adopted without the consent of that parent, termination of parental rights is a remedy that is specially designed to meet the particularized needs of a child for a stable and permanent custodial arrangement. See T.W. v. Calhoun Cnty. Dep't of Hum. Res., supra. Thus, at a minimum, when deciding whether termination of parental rights is in the best interests of a child, a juvenile court should focus on whether termination of the legal relationship between the child and the parent will protect the welfare of the child and promote the stability and permanency of the child. Id.

24

In Ex parte Brooks, supra, a juvenile court denied the joint petition of a custodial parent and a noncustodial parent requesting that the noncustodial parent's parental rights be terminated because it concluded that the termination would deprive the child of the future right to child support, parental affiliation, and inheritance from the noncustodial parent without meaningfully benefiting the child. 513 So. 2d at 615. Our supreme court agreed that it would not be in the best interests of the child to lose those rights, particularly the right to child support, when the child "would receive nothing in return." 513 So. 2d at 617. The supreme court determined in Ex parte Brooks that termination of the parental rights of the father of the child at issue in that case was not necessary to secure the child from parental harm because the child's father had never harmed him. The supreme court further concluded that the termination did not serve the child's custodial needs because the child's father was not disrupting the stable and permanent familial relationship between the child and his mother, who had independently raised him as a single parent since his birth. Id. As the child's guardian ad litem further pointed out, the termination was not accomplished in contemplation of the future adoption of the child. 513 So. 2d at 616. Considering those

25

circumstances, the supreme court ultimately determined that termination of parental rights was not an appropriate remedy because it did not serve the best interests of the child as intended by the termination statute.

The supreme court later overruled Ex parte Brooks in part, on other grounds, see Ex parte Beasley, 564 So. 2d 950 (Ala. 1990), and the supreme court also subsequently clarified that a judgment terminating parental rights does not automatically terminate a parent's obligation to pay child support. See Ex parte M.D.C., 39 So. 3d 1117 (Ala. 2009). However, the reasoning in Ex parte Brooks otherwise remains sound and has been followed by this court in numerous cases in which a custodial parent was seeking to terminate the parental rights of a noncustodial parent. See, e.g., In re Beasley, 564 So. 2d 959 (Ala. Civ. App. 1990); Miller v. Knight, 562 So. 2d 274 (Ala. Civ. App. 1990); Talley v. Oliver, 628 So. 2d 690 (Ala. Civ. App. 1993); and S.M.W. v. J.M.C., 679 So. 2d 256 (Ala. Civ. App. 1996).

Based on that line of cases, this court has recognized that, when a child is safely residing in a stable and permanent custodial arrangement with a custodial parent, and no adoption of the child is contemplated, the

26

best interests of the child are not served by termination of the noncustodial parent's parental rights. See J.C.D. v. Lauderdale Cnty. Dep't of Hum. Res., 180 So. 3d 900, 901 (Ala. Civ. App. 2015) ("Termination of the parental rights of a noncustodial parent is not appropriate in cases in which the children can safely reside with the custodial parent and the continuation of the noncustodial parent's relationship does not present any harm to the children."). When a custodial parent can "adequately provide for the safety, permanency, and other needs of the child[]," termination of the parental rights of a noncustodial parent generally is not appropriate because the child does not benefit from the termination of parental rights in any legally significant way. Id. at 902.

> "In most cases, the termination of parental rights serves to free up children for adoption so that the children can achieve permanency and stability. ... However, when [a judgment awards a natural parent custody of the children], their interest in permanency and stability has been satisfied and a termination of the parental rights of the noncustodial parent will not advance that interest in any respect."

J.G. v. Lauderdale Cnty. Dep't of Hum. Res., 379 So. 3d 444, 450 (Ala. Civ. App. 2023). "Termination of parental rights is reserved for those rare cases in which no less drastic measure can achieve the state's

compelling objective of safeguarding children from harm or the children's interest in achieving permanency and stability." Id. at 451.

In the context of termination of parental rights, "the term 'permanency' refers to a safe, stable, and nurturing custodial arrangement lasting throughout the child's minority." T.W., ___ So. 3d at ___. "Stability" refers mainly to "stability in the psychological and emotional relationship a child has with his or her custodial parent." T.C. v. Y.R., 162 So. 3d 920, 928 (Ala. Civ. App. 2014) (Moore, J., dissenting). In this case, the undisputed facts show that the mother is adequately meeting the child's security, stability, and permanency needs, and those needs will not be further promoted by termination of the parental rights of the father. The child is safely residing with the mother. The continuation of the legal relationship between the father and the child does not threaten the safety and welfare of the child. Maintaining the legal father-child relationship does not imperil the child's stable custodial arrangement with the mother or implicate his prospects for adoption. See W.W. v. H.W., [Ms. CL-2022-0710, Apr. 14, 2023] ___ So. 3d ___, ___ (Ala. Civ. App. 2023) (holding that, given absence of adoptive resource, termination did not serve best interests of child). Applying the law to

28

these undisputed facts, the only legal conclusion to be drawn is that termination of the father's parental rights is not appropriate because it does not advance the best interests of the child, particularly those interests most relevant in these types of cases. The juvenile court erred in deciding otherwise.

## Conclusion

Termination of parental rights deprives a child of a legal parent, and the remedy should be invoked only when, in return, it supplies the child with the necessary security, stability, and permanency the child would otherwise lack by maintaining the parental relationship. See T.W., supra. If not, the best interests of the child require that the petition to terminate parental rights be denied. See Ex parte Brooks, supra. In this case, the juvenile court misapplied the law to the undisputed facts when it impliedly determined that termination of the father's parental rights would serve the best interests of the child and imposed the extreme remedy of termination of parental rights. We cannot allow that legal error to go uncorrected based solely on the failure of the father to properly preserve the best-interests-of-the-child issue for our review. Accordingly, we reverse the juvenile court's judgment terminating the father's

parental rights and remand the case for the entry of a judgment denying

the mother's petition to terminate the father's parental rights.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards and Lewis, JJ., concur.

Hanson, J., dissents, with opinion, which Fridy, J., joins.

HANSON, Judge, dissenting.

I respectfully dissent from the main opinion's reversal of the Dale Juvenile Court's judgment terminating the parental rights of J.A. ("the father") to M.J.A. ("the child"), which reversal is predicated on the ground that the termination of his parental rights was not in the child's best interests. The father (who is the sole appealing party) failed to raise the best-interests issue in his appellate brief, and, even if he had properly raised the issue, he waived the issue by failing to challenge the sufficiency of the evidence supporting the judgment in a postjudgment motion.

The father, in his appellate brief, did not formulate an argument, supported by relevant authority, that S.L. ("the mother") had failed to demonstrate that the best interests of the child would not be served by terminating his parental rights. See Rule 28(a)(10), Ala. R. App. P. This court has consistently acknowledged that a parent, in a dependency or a termination-of-parental-rights case, waives an argument not properly raised and argued in brief. See, e.g., J.C.L. v. J.B.L., 370 So. 3d 254, 267 (Ala. Civ. App. 2022) (concluding that a mother's appellate brief failed to cite any authority in support of her cursory assertion that the juvenile

court's judgment terminating her parental rights was in the child's best interest); D.M. v. Jefferson Cnty. Dep't of Hum. Res., 232 So. 3d 237, 243 (Ala. Civ. App. 2017) (holding that this court would not consider the issue of abandonment when a father did not challenge the juvenile court's finding of abandonment or cite any authority in support of such an argument); T.T. v. C.E., 204 So. 3d 436, 440 (Ala. Civ. App. 2016) (holding that a father had waived claim that termination of his parental rights was not in the best interests of the child by failing to set forth an argument supported by relevant authority).

In Hudson v. Hudson, 178 So. 3d 861, 865 (Ala. Civ. App. 2014), this court stated:

> "'Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived.' White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008); see also Bishop v. Robinson, 516 So. 2d 723, 724 (Ala. Civ. App. 1987) (quoting Thoman Eng'g, Inc. v. McDonald, 57 Ala. App. 287, 290, 328 So. 2d 293, 294 (Civ. App. 1976)) (noting that an appellant should 'present his issues "with clarity and without ambiguity"' and 'fully express his position on the enumerated issues' in the argument section of his brief); accord United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ('It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.')."

The main opinion's creation of an argument on behalf of the father, as the appellant, results in fundamental unfairness to the mother who has had no opportunity to respond to the main opinion's <u>sua sponte</u> advancement of an argument on behalf of the father because the father had failed to raise that argument in his appellate brief. I believe that this court must refrain from overstepping its bounds and addressing issues not adequately presented and briefed. This court, unlike the Alabama Court of Criminal Appeals, is not tasked with complying with the optional "plain error" rule. <u>See</u> Rule 45A, Ala. R. App. P.

Furthermore, even if the father had properly asserted an argument that the mother had failed to demonstrate that the best interests of the child would not be served by termination of his parental rights, he nevertheless failed to challenge the sufficiency of the evidence of the child's best interests in a postjudgment motion. Other than acknowledging that the father had abandoned the child for a period of more than four months, the juvenile court's judgment did not make specific findings of fact as to the grounds for its termination of the father's parental rights. The father failed to file a postjudgment motion challenging the sufficiency of the evidence supporting the judgment. A

judgment terminating parental rights does not equate to a specific finding of fact that will excuse the filing of a postjudgment motion raising the issue of the sufficiency of the evidence to support the termination judgment. See New Props., L.L.C. v. Stewart, 905 So. 2d 797, 801-02 (Ala. 2004) ("[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review."). If the father had filed a postjudgment motion attacking the sufficiency of the evidence, the juvenile court would have been afforded the opportunity to review the evidence and correct any errors in its judgment. Id.

Regarding addressing ex mero motu issues not preserved for appeal, the main opinion relies on Hall v. Hall, 280 Ala. 275, 192 So. 2d 727 (1966), which involved the issue whether a payment by the former husband to his former wife was a gift or whether the gift was conditioned on the former wife's promise to hold the payment in trust for their minor child. In explaining the nature of the payment, the supreme court explained:

> "This money in a sense was the property of the minor, for her maintenance and support, although paid to the mother for administration and expenditure. The child is neither a party to this suit, nor is she represented by guardian ad litem. She is a ward of the court and entitled to its protection.
>
> "While we have held that where the support installments to a minor that mature before a petition to modify is filed are immune from change (Scott v. Scott, 265 Ala. 208, 90 So. 2d 813 [(1956)]), we are here unwilling to hold that the petitioner, for modification, is entitled to a refund of the payments, made after petition was filed, that he elected to pay. We think this court has a duty ex mero motu to protect the welfare of its minor ward who is before the court. Pritchett v. Dixon, 222 Ala. 597, 133 So. 2d 283 [(1931)]; Doss v. Terry, 256 Ala. 218, 54 So. 2d 451[(1951)]."

Hall, 280 Ala. at 280, 192 So. 2d at 731. Both Pritchett v. Dixon, 222 Ala. 597, 133 So. 2d 283 (1931), and Doss v. Terry, 256 Ala. 218, 54 So. 2d 451 (1951), which were relied upon in Hall, involved the supreme court's recognition that the failure to appoint a guardian ad litem for an infant was an error that had to be noticed ex mero motu despite not having been raised. Likewise, Citizens Walgreen Drug Agency, Inc. v. Gulf Insurance Co., 282 Ala. 648, 213 So. 2d 814 (1968), which is cited by the main opinion, concerned the absence of a guardian ad litem.

The main opinion cites Ex parte R.H., 311 So. 3d 761 (Ala. Civ. App. 2020), to support its contention that this court should disregard the rules

governing procedure in our courts in order to raise issues and create arguments on behalf of interested persons. This court explained in J.C.L. v. J.B.L., 370 So. 3d 254, 265-66 (Ala. Civ. App. 2022), why Ex parte R.H. does not support disregarding our rules except under extraordinary facts:

> "The dissent attempts to broadly expand part of the holding in Ex parte R.H., 311 So. 3d 761, 771 (Ala. Civ. App. 2020), in which this court, ex mero motu, considered an issue that had not been properly argued by the petitioner. That case involved extreme facts -- the guardian ad litem for the child at issue had filed a motion in the Marshall Juvenile Court seeking an order that would allow the child's physicians to place a 'Pediatric Palliative and End of Life' ('PPEL') care order in the child's medical file; the effect of the PPEL care order would have been to allow the natural death of the child, who had a painful and terminal medical condition. In her petition for a writ of mandamus challenging an order granting that request, the mother in that case raised several issues[,] including whether the juvenile court could properly appoint the child's guardian ad litem to execute the PPEL care order, an issue the mother had not argued in the juvenile court; this court disagreed as to whether the mother's argument as to that issue in her petition for a writ of mandamus was adequate. This court also noted that, '[o]rdinarily, when a petitioner has not raised a point in support of the issuance of a writ of mandamus before the lower court, that point is not preserved for the appellate court's consideration.' Ex parte R.H., 311 So. 3d at 771. However, this court did not apply in that particular case the rules that an issue must be raised in the lower court to preserve the issue for consideration by an appellate court and that this court may not raise issues not identified by the petitioner or appellant; this court explained that, under the extraordinary circumstances of the case, the child's right to life overrode the technical rules of our courts:

36

"'In this case, the juvenile court committed an indisputable error of law in appointing [the guardian ad litem] as the representative of the child because [the guardian ad litem] is not within the class of persons eligible to act as a representative for a qualified minor under § 22-8A-3(18)[, Ala. Code 1975]. That error has far more profound implications than a mere irregularity in the proceedings. The challenged order allows [the guardian ad litem] to execute a PPEL care order designed to withhold life-sustaining treatment from the child although [the guardian ad litem] does not have any custodial power over the child. That error directly impacts the fundamental right of the child to life. See United States Constitution, amend. V ("No person shall be ... deprived of life ... without due process of law ...."), and amend. XIV, § 1 ("... nor shall any State deprive any person of life ... without due process of law ...."). The child lacks any capacity, legal or actual, to raise this issue on his own. His fundamental rights should not be disregarded based on the failure of the mother to comply with technical procedural rules for preserving issues for mandamus review. To prevent an injustice of such magnitude, this court exercises its limited discretion to correct the error sua sponte.'

"Ex parte R.H., 311 So. 3d at 772 (emphasis added).

"There is nothing in the language of Ex parte R.H., supra, indicating that this court or its members should, under different facts that do not implicate a life-or-death decision regarding a child, disregard the rules governing our courts and create, elaborate upon, analyze, and support with citations to authority an argument not advanced by any of the

37

parties. The dissent has not identified any extraordinary facts of this case that would warrant doing so.

"Moreover, in Ex parte R.H., supra, this court considered issues that implicated the authority of the child's own guardian ad litem to take action on behalf of the child. In pointing out that the child in Ex parte R.H. had no 'capacity, legal or actual, to raise this issue on his own,' this court recognized that it was considering the authority of the child's own -- and only -- representative to make a life-or-death decision on behalf of the child. Ex parte R.H., 311 So. 3d at 772. In other words, under the peculiar facts of that case, the only representative who could validly question the authority of the person making the life-or-death decision for the child was the person authorized to make that decision under the judgment at issue in that case. Although that conflict was arguably not the fault of the guardian ad litem in that case, the child had no disinterested advocate in Ex parte R.H., supra.

"In this case, however, the child was represented by able counsel in the juvenile court, and, therefore, the child, through her guardian ad litem, had the ability to assert the argument formulated by the dissent. The child has not done so. The mother is also represented by counsel and appears to have chosen not to advance the argument made by the dissent. … Also, the father has not appealed to contend that he should continue to receive child support on behalf of the child. Accordingly, we do not reach the issues advanced in the dissent to this opinion."

(Footnote omitted.)

I also note that, in Ex parte R.H., the court referenced Berry v. Berry, 2018 Pa. Super. 276, 197 A.3d 788, 797 (2018), South Carolina

Dep't of Soc. Servs. v. Roe, 371 S.C. 450, 463, 639 S.E.2d 165, 172 (Ct. App. 2006), and In re J.E.G., 144 Vt. 309, 313, 476 A.2d 130, 133 (1984), as supporting the proposition that the rule that an unpreserved issue will not be considered on appeal is subject to a blanket exception when the interests of minors and incompetents are involved. Berry involved the divorce of a couple, who both suffered from dementia, and their adult children purported to act on the couple's behalf. Roe involved a parent with diagnosed mental deficiencies and that parent's failure to raise a best-interests argument and South Carolina's clear, established precedent allowing Courts to address, ex mero motu, issues involving minors or incompetents. J.E.G. involved a delinquent child. Although the decisions in those cases may have supported abandoning our rules in Ex parte R.H., ignoring our rules is not warranted in the present case (or, indeed, in future cases in which the best-interests issue is neither raised nor argued by an appellant).

> "'"'[F]airness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; ... the rule promotes efficient trial proceedings; ... reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not

39

produce the desired result; and ... <u>there is
something unseemly about telling a lower court it
was wrong when it never was presented with the
opportunity to be right</u>. The principal rationale,
however, is judicial economy. There are two
components to judicial economy: (1) if the losing
side can obtain an appellate reversal because of
error not objected to, the parties and public are put
to the expense of retrial that could have been
avoided had an objection been made; and (2) if an
issue had been raised in the trial court, it could
have been resolved there, and the parties and
public would be spared the expense of an
appeal.'"'

"<u>Ex parte Elba Gen. Hosp. & Nursing Home, Inc.,</u> 828 So. 2d
308, 314 (Ala. 2001) (quoting <u>Cantu v. State,</u> 660 So. 2d 1026,
1032 (Ala. 1995) (Maddox, J., concurring in part and
dissenting in part), quoting in turn <u>State v. Applegate,</u> 39 Or.
App. 17, 21, 591 P. 2d 371, 373 (1979) (emphasis added in <u>Ex
parte Elba</u>))."

<u>State v. Beaird</u>, 981 So. 2d 386, 392 (Ala. 2007).

With today's decision, I believe this court treads upon the slippery

slope of raising issues <u>ex mero motu</u> in all present and future cases

involving children, regardless of the main opinion's efforts to couch the

principle it is espousing as not representing a departure from basic tenets

of preservation and argument as inherent prerequisites to principled

appellate review. The main opinion's approach places a burden not only

on the court, but also on attorneys practicing in this court: Regardless of

40

whether an argument directed to an issue is duly raised by an appellant, attorneys for appellees must now guess at which nonjurisdictional, substantive issues this court will raise ex mero motu, and, in order to protect their clients, they will need to address those issues in their briefs.

I further adhere to the view, previously expressed in my special writing in Ex parte R.H., 311 So. 3d at 773 (Hanson, J., concurring in part and concurring in the result), that the majority opinion in Stevens v. Everett, 784 So. 2d 1054 (Ala. Civ. App. 2000), is not precedential. Our supreme court in Ex parte Fann, 810 So. 2d 631 (Ala. 2001) -- a case that also involved the interests of minor children -- quoted from the dissenting opinion in Stevens, which had correctly indicated that the majority opinion in Stevens, by raising sua sponte a lack of "magic words" in a custody judgment as a basis for reversing it, had gone beyond "'the fundamental precepts of appellate procedure.'" 810 So. 2d at 635 (quoting Stevens, 784 So. 2d at 1056 (Robertson, P.J., dissenting)). Although bona fide jurisdictional defects that are fatal to the very validity of a judgment may warrant sua sponte notice on the part of a reviewing court, such as when our supreme court noticed defects in subject-matter and personal jurisdiction in, respectively, Jones v. Jones, 56 Ala. 612, 612 (1876), and

41

Clark v. Gilmer, 28 Ala. 265, 266-67 (1856), that limited exception is not carte blanche for members of this court to impose blanket correction of nonjurisdictional errors they may perceive to have occurred in pleading and practice in lower courts.

Based on the foregoing, I dissent from the main opinion's reversal of the juvenile court's judgment based on an argument that was not properly formulated and supported by relevant authority and that the father waived by failing to assert it in a postjudgment motion.

Fridy, J., concurs.